2003 ND 141

**Celeste BARNES, Claimant and Appellant,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee,**

and

**North Dakota Parks and Rec., Respondent.**

No. 20030012.

Supreme Court of North Dakota.

Sept. 2, 2003.

Rehearing Denied Sept. 26, 2003.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for appellee.

NEUMANN, Justice.

[¶ 1]   Celeste Barnes appeals from a district court judgment affirming an order of Workforce Safety and Insurance [1] denying benefits for Barnes's cervical spine condition.  We affirm, concluding that the administrative law judge ("ALJ") did not err in admitting expert testimony, that the ALJ and the organization did not apply an erroneous legal standard, and that the organization's finding that Barnes's cervical spine condition was· not a compensable injury is supported by a preponderance of the evidence.

I

[¶ 2]   Barnes had a lengthy history of non-work-related low back problems, culminating in surgery to fuse the L5–S1 vertebrae in February 1998.  She returned to her employment as an administrative assistant at Cross Ranch State Park in May 1998.

[¶ 3]   On September 2, 1998, as Barnes was getting out of her chair at work, the back of the chair broke off and she fell backwards onto her tailbone.  Barnes was taken by ambulance to a Bismarck hospital, where she complained of extreme back pain and some tightening in her neck.  The emergency room doctor diagnosed a contused sacrum.  Barnes thereafter saw her regular doctor, who released her to return to work on September 21, 1998.

[¶ 4]   Barnes filed a claim for her injuries with the organization on September 11, 1998.  The organization accepted the claim and began paying Barnes's medical expenses.  Barnes experienced continuing low back problems after the work injury, and in April 1999 had surgery to remove screws from her prior back surgery.

[¶ 5]   At some point after the work injury Barnes began experiencing numbness in her fingers and some neck pain.  An MRI performed in November 1999 showed some bulging of the cervical discs. Barnes was referred to Dr. Francis Denis, who diagnosed Barnes with herniated cervical discs with congenital spinal. stenosis.  On May 23, 2000, Dr. Denis performed fusion surgery on Barnes's cervical spine at C4–5, C5–6, and C6–7.

[¶ 6]   In March 2000, the organization informed Barnes that it was denying liability for her neck and upper extremity

1.  The 2003 Legislature changed the title of the North Dakota Workers Compensation Bureau to Workforce Safety and Insurance.  *See* 2003 N.D. Sess. Laws ch. 561; N.D.C.C. § 65–02–01.1.  Section 65–02–01.1 indicates Workforce Safety and Insurance should be referred to as an "organization."

problems. Barnes's attorney provided additional information to the organization, including a letter from her treating physician, Dr. Martire, stating the cervical problems were causally related to her work injury. Barnes requested that the organization issue an appealable order if it was not going to pay medical expenses for her cervical spine problems. The organization requested an opinion from its medical consultant, Dr. Kilzer, and also requested an independent record review by Dr. Simonet, an orthopedic surgeon. Both Dr. Kilzer and Dr. Simonet concluded Barnes's cervical problems were not causally related to her work injury. On November 2, 2000, the organization issued an order denying specific benefits, concluding Barnes's cervical spine problems were not related to the work injury.

[¶ 7] Barnes requested a hearing, which was scheduled for May 3, 2001. Shortly after the hearing began, the ALJ determined a continuance was necessary to allow further discovery and to allow the organization to amend its order to address disability benefits. After the organization issued an amended order denying disability benefits, the hearing was continued on November 7, 2001. The ALJ issued her recommended findings of fact, conclusions of law, and order, finding Barnes's cervical problems were not causally related to her work injury and affirming the organization's order denying benefits. The organization adopted the ALJ's recommended findings, conclusion, and order. The organization denied Barnes's request for reconsideration, and she appealed to the district court. The district court affirmed the organization's order, and Barnes appealed to this Court.

II

[¶ 8] Under N.D.C.C. § 28-32-46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On an appeal from the district court's judgment, this Court reviews the agency order in the same manner. N.D.C.C. § 28-32-49; *Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Comp. Bureau*, 2002 ND 204, ¶ 8, 654 N.W.2d 426.

[¶ 9] We review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Paul v. North Dakota Workers Comp. Bureau*, 2002 ND 96, ¶ 6, 644 N.W.2d 884. We exercise restraint in deciding whether the agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the

agency. *Id.* We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Grand Forks Prof'l Baseball,* 2002 ND 204, ¶ 8, 654 N.W.2d 426.

### III

[¶ 10] The sole issue raised by Barnes on appeal is whether the organization's finding that Barnes's cervical spine problem was not a compensable injury is supported by a preponderance of the evidence. In support of her argument, Barnes contends that the organization should not have relied upon the expert opinions of Dr. Simonet and Dr. Kilzer, and that the organization and the ALJ applied an incorrect legal standard in determining Barnes's cervical condition was not causally related to her work injury.

### A

■ [¶ 11] Barnes argues the organization should not be allowed to rely upon the expert opinion of Dr. Kilzer, an orthopedic surgeon who was employed by the organization as a medical consultant. Barnes claims there is no statutory authority for the organization to rely upon the opinion of one of its own employees as substantive evidence in a formal administrative proceeding.

[¶ 12] Admissibility of evidence in adjudicative proceedings before an administrative agency is governed by the North Dakota Rules of Evidence. N.D.C.C. § 28–32–24(1); *Aalund v. North Dakota Workers Comp. Bureau,* 2001 ND 32, ¶ 7, 622 N.W.2d 210. Under N.D.R.Ev. 702, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion if his scientific, technical, or other specialized knowledge will assist the trier of fact. *See Myer v. Rygg,* 2001 ND 123, ¶ 10, 630 N.W.2d 62.

[¶ 13] We find nothing in the Rules of Evidence or the statutes governing administrative procedure which precludes an agency employee from testifying as an expert in an administrative proceeding. While Dr. Kilzer's employment by the organization may be relevant to show bias and provide a basis to attack his credibility, it does not affect admissibility.

■ [¶ 14] Barnes also suggests the organization should not have relied upon the expert opinion of Dr. Simonet, who conducted an independent review of Barnes's medical records at the organization's request. Dr. Simonet concluded that there was no physiological basis for Barnes's cervical spine complaints and that Barnes suffered from somatoform pain disorder. Barnes claims that Dr. Simonet, an orthopedic surgeon, was not qualified to diagnose somatoform pain disorder, a psychiatric diagnosis.

[¶ 15] If Barnes is challenging the admissibility of Dr. Simonet's opinion, she did not preserve the issue in the administrative proceedings below. The record demonstrates that, although Barnes initially objected to Dr. Simonet's opinion, she subsequently withdrew her objection and waived this issue. Accordingly, any argument on appeal about Dr. Simonet's opinion may go only to its weight and credibility, not to its admissibility.

### B

[¶ 16] Barnes contends the ALJ and the organization may have mistakenly concluded that Barnes's fall at work had to be the sole cause of her cervical condition for the injury to be compensable. Barnes cites findings of fact which note that sever-

al of the doctors indicated Barnes had prior cervical problems which may have contributed to her neck pain. At various points in the findings, the ALJ and the organization stated:

Dr. Denis also stated, however, that "[t]here is no question that a part of her problems in the cervical spine were related to ... a component of degenerative disc disease prior to the accident" as well as to "a very likely sudden onset of herniations at C4–5 and C6–7 related to the accident."

Dr. Martire agreed Dr. Denis indicated the May 23, 2000, cervical spine surgery was needed at least in part to correct the congenital narrowed spinal canal as indicated in Barnes's radiographic studies. Dr. Martire further agreed that the congenital narrowed spinal canal was a condition that had nothing whatsoever to do with the fall at work and the condition might or might not cause neck pain.

Dr. Simonet, Dr. Kilzer and even Dr. Denis attributed at least part of the cause of the neck pain to be the degenerative spine condition.

[¶ 17] We view these findings as merely statements summarizing the evidence, not as an indication that the ALJ misunderstood the legal standard for determining whether an injury is compensable. In the conclusions of law, the ALJ and the organization outlined the appropriate standard under N.D.C.C. § 65–01–02(11), the statute which defines compensable injury:

1. Under the provisions of N.D.C.C. § 65–01–02(11) (1997), in order for an injury to be compensable under the North Dakota Workers Compensation Act, it must arise "out of and in the course of employment" and "must be established by medical evidence supported by objective medical findings."

2. Under the provisions of N.D.C.C. § 65–01–02(11)(b)(7) (1997), a compensable injury does not include injuries that are attributable to preexisting conditions, even if the employment acts as a trigger to produce symptoms in the condition, unless the employment substantially accelerates the progression, or substantially worsens the severity, of the preexisting condition.

[¶ 18] We conclude the ALJ and the organization did not apply an erroneous legal standard.

C

[¶ 19] The crux of this case is essentially a battle of the experts. The ALJ was presented with a variety of conflicting medical opinions on whether Barnes's cervical spine condition was causally related to her work injury. The ALJ determined that Dr. Simonet's and Dr. Kilzer's opinions, which concluded Barnes's cervical spine problems were not causally related to her work injury, were the most credible.

[¶ 20] A claimant seeking workers compensation benefits generally has the burden of proving by a preponderance of the evidence that she has suffered a compensable injury. N.D.C.C. § 65–01–11; *Elter v. North Dakota Workers Comp. Bureau*, 1999 ND 179, ¶ 15, 599 N.W.2d 315. It is the organization's responsibility to weigh the credibility of conflicting medical evidence. *Negaard–Cooley v. North Dakota Workers Comp. Bureau*, 2000 ND 122, ¶ 18, 611 N.W.2d 898; *Boger v. North Dakota Workers Comp. Bureau*, 1999 ND 192, ¶ 11, 600 N.W.2d 877. In so doing, the organization must consider the entire record, clarify inconsistencies, and adequately explain its reasons for disregarding medical evidence favorable to the claimant. *Negaard–Cooley*, at ¶ 18; *Boger*, at ¶ 11.

[¶ 21] The ALJ in this case issued lengthy findings of fact setting out the various conflicting medical opinions and explained in detail her reasons for accepting Dr. Simonet's and Dr. Kilzer's opinions over the opinions supporting Barnes's claim. While we may not have reached the same result had we been the initial finder of fact, we exercise restraint in reviewing the organization's findings of fact and resolution of conflicting evidence, and we do not make independent findings or substitute our judgment for that of the organization. *See Paul v. North Dakota Workers Comp. Bureau*, 2002 ND 96, ¶ 6, 644 N.W.2d 884.

[¶ 22] We conclude that the ALJ and the organization adequately clarified inconsistencies in the medical evidence and explained their reasons for disregarding the medical evidence favorable to Barnes, and that a reasoning mind reasonably could have found that Barnes's cervical spine condition was not a compensable injury.

### IV

[¶ 23] We have considered the remaining issues and arguments raised by Barnes and find them to be without merit. The judgment of the district court affirming the organization's order is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.

MARY MUEHLEN MARING.

I concur in the result.

[¶ 25] The Honorable RONALD L. HILDEN, District Judge, sitting in place of KAPSNER, J., disqualified.

RONALD L. HILDEN, District Judge, dissenting.

[¶ 26] I respectfully dissent.

[¶ 27] Under all of the rules, regulations and procedures promulgated and followed by the agency, I should be joining the majority. Under the agency appeal procedure, there can be scant quarrel that rules were obeyed. Under the judicial appeal procedure of the administrative practices act, the district judge scrupulously followed the statute governing such review. And now, under the rules of appellate construction and a sea of precedent, this court affirms. Everyone was right, everyone followed the law and precedent but the injured worker loses.

[¶ 28] The reason this claimant loses is because a doctor employed by the agency as a reviewer of medical records formed and then convincingly expressed his opinion that claimant's condition was not work-injury related. The record reviewer had never met, examined or even seen the claimant. Yet his record-studied opinion was sufficient to trump the opinions of her treating physicians. This kind of evidence signals a dilution in the integrity of the doctor/patient relationship and, in my view, should not be tolerated. I would therefore defy precedent and remand to the agency with instructions to reconsider without regard for or any deference to agency-generated adverse medical opinions.

[¶ 29] Perhaps this lament might be more apt as a letter to the editor or to the deliberative members of our state legislative body. However, I write only to express my belief that this injured worker and others are being denied rightful redress by this flawed agency protocol.