2003 ND 177

**Rosella ELSHAUG, Claimant and Appellee,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellant,**

**and**

**Ashley Medical Center, Respondent.**

**No. 20030100.**

Supreme Court of North Dakota.

Nov. 18, 2003.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, for claimant and appellee.

Leo F.J. Wilking, Special Assistant Attorney General, Fargo, for appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") appealed from a district court judgment ordering it to provide benefits to Rosella Elshaug. We conclude the agency properly denied Elshaug further benefits, and we reverse and remand for entry of a judgment affirming WSI's orders.

I

[¶ 2] On July 14, 1994, Elshaug filed a claim alleging an injury on May 12, 1994, when she had a physical reaction to chemicals mixed by a coworker in the Ashley Medical Center laundry room. WSI awarded benefits because Elshaug "sustained an injury by accident arising out of and in the course of employment." On November 7, 1996, Elshaug filed a claim for a reaction to chemicals at work on November 4, 1996. WSI awarded benefits for that incident.

[¶ 3] On June 25, 1997, WSI issued an order denying further benefits after April 15, 1997, finding:

V.

After the claimant returned to work, she continued to complain of headaches and a multitude of symptoms which she believes are related to the work injury of November 4, 1996.

. . . .

X.

The greater weight of the evidence indicates that the claimant has fully recovered from her exposure injury of November 4, 1996, and is therefore, no longer entitled to benefits in connection with that injury."

Elshaug requested reconsideration and a formal hearing. On December 8, 1997, Elshaug filed a notice of reapplication. On January 28, 1998, WSI issued an order denying Elshaug's reapplication, finding:

V.

The claimant filed a written reapplication for benefits on December 8, 1997, indicating that her condition worsened as of November 22, 1997, due to repeated exposures while on the job on August 19, 20, and 21, 1997. The claimant stated that she has severe stomach and chest pain, swelling in the throat, inability to breathe, flu symptoms, and severe headache. The claimant further stated that Dr. Jacqueline Krohn advised her not to work.

. . . .

IX.

The Bureau requested that Dr. Mendoza review the report from Dr. Krohn and he stated that he does not believe in chemical sensitivities as described by Dr. Krohn and that this is well stated in the literature, especially the immunological literature to that effect. Dr. Mendoza further stated that in his opinion, Dr. Krohn's evaluation should not be of value in view of the fact that he does not consider this disease a real entity.

. . . .

XI.

The Bureau finds that the claimant has not established that she is entitled to additional benefits in connection with the reapplication dated December 8, 1997.

WSI ordered payment of medical expenses related to the November 4, 1996, injury and denied any disability benefits beyond those already awarded.

[¶ 4] On February 26, 1998, Elshaug requested reconsideration and a formal hearing. An administrative law judge ("ALJ") conducted a hearing on June 11, 1998. He stated Elshaug's contention:

Elshaug disputes the Bureau's determinations, contending that her present medical condition, perhaps best described as "multiple chemical sensitivities" or "MCS," is the result of exposure to chemicals ... in the course of her employment in the laundry at Ashley Medical Center on May 12, 1994, and November 4, 1996, as the result of which she continues to experience symptoms, and that the condition worsened as a result of other and further exposures to chemicals in the course of her employment on various occasions after May 12, 1994, until she discontinued working at Ashley Medical Center on November 22, 1997.[1]

The ALJ concluded, among other things:

3. There is little reason to doubt that Elshaug reacts adversely to the odors and fumes of laundry cleaning agents and other chemical compounds. But the question is not whether she has an adverse reaction to various odors and fumes of laundry cleaning agents, and certainly not whether that was her first experience with the reaction, but whether she has developed, as a disease fairly traceable to her employment, a "chemical sensitivity," a disease which may be fairly described as chemical sensitivity or MCS, as a "compensable injury" within the meaning of 65–01–02(9) (1993), and whether there has been a worsening of that disease after June 25, 1997, such as to constitute a significant change in her medical condition within the purpose and intent of 65–05–08(1) (1997).

In his August 5, 1998, recommended findings of fact, conclusions of law, and order, the ALJ recommended WSI's June 25, 1997, order denying further benefits and its January 28, 1998, order denying reapplication be affirmed. WSI adopted the ALJ's recommended findings of fact, conclusions of law, and order as its order on August 21, 1998.

[¶ 5] Elshaug petitioned for reconsideration on September 16, 1998. Elshaug appealed WSI's August 21, 1998, order to the district court on October 15, 1998. WSI denied Elshaug's September 16, 1998, petition for consideration on October 16, 1998. The district court order entered on July 27, 1999, reversed WSI's orders of August 21, 1998, and October 16, 1998 and ordered WSI to provide Elshaug "with the benefits to which she is entitled." WSI appealed on September 21, 1999.

---

1. *PDR Medical Dictionary*, p. 1619 (2d ed.2000) defines multiple chemical sensitivity:

a symptom array of variable presentation attributed to recurrent exposure to known environmental chemicals at dosages generally below levels established as harmful; complaints involve multiple organ systems. SYN environmental illness.

*See also* 3B *Lawyers' Medical Cyclopedia*, § 24.70a (5th ed.2003), describing symptoms:

Multiple chemical sensitivity syndrome (MCS) is thought to be an acquired disorder characterized by recurrent symptoms that may include fatigue, respiratory problems, memory loss, difficulty in concentrating, dizziness, gastrointestinal complaints, depression, headaches, muscle aches, chest pain, nausea and irritability. The symptoms usually appear after exposure to environmental chemicals, including pesticides, solvents, combustion products, indoor air pollutants, drugs, or anesthetics.

The array of literature cited by the experts in this case reveals there is a significant controversy among physicians about whether MCS is a valid medical diagnosis.

[¶ 6] This Court concluded "there were improper ex parte contacts between the Bureau's outside counsel and the Bureau under N.D.C.C. § 28–32–12.1." *Elshaug v. N.D. Workers Comp. Bureau*, 2000 ND 42, ¶ 1, 607 N.W.2d 568. We affirmed the district court's reversal of WSI's denial of Elshaug's petition for reconsideration, reversed that part of the district court's judgment directing WSI to award benefits, and remanded with directions to grant Elshaug's petition for reconsideration and rehearing. *Id.* at ¶ 11.

[¶ 7] After a hearing and the reception of additional evidence, the ALJ issued recommended findings of fact, conclusions of law, and order on September 19, 2001. In discussing the rationale for his decision, the ALJ stated:

> [T]he threshold question must be whether MCS is a disease (for which workers' compensation benefits must be provided if the medical evidence, supported by objective medical findings, establishes that it is a compensable injury within the meaning of the statute) or a mental disorder (a "mental injury" for which workers' compensation benefits are not provided).
>
> . . . .
>
> In response to the mandate of the supreme court, Elshaug obtained additional medical evidence from Dr. Singer and returned to Dr. Krohn for additional information and her further advice and opinions. . . . But the Bureau also offers additional medical evidence by an expert witness, Dr. McCrary, which countervails ... the information, advice and opinions offered by Dr. Krohn. . . . Dr. Krohn has concluded that MCS is a disease, and provides treatment accordingly to persons having the symptoms which have been identified as indicative of the disease. Dr. Krohn's findings, advice and opinion are grounded upon

the premise that MCS is a disease. Conversely, Dr. McCrary has concluded that MCS is not a disease, and his advice and opinion are based on that conclusion. Therefore, a decision whether to accept the testimony of Dr. Krohn or Dr. McCrary for the determination of this matter first requires a decision whether MCS is a disease.

> . . . .
>
> In my judgment, there is not enough evidence of record to determine whether or not MCS is a disease. . . . But neither do I find the contentions of Dr. Mendoza and Dr. McCrary sufficiently persuasive to convince me that Elshaug's medical condition is psychosomatic as a specific mental disorder. . . . .
>
> While I appreciate the extraordinarily heavy burden of proving a proposition which is so controversial that professional associations do not agree, it is nonetheless Elshaug's burden in this case. Failing to carry that burden, Elshaug has not established her entitlement to workers' compensation benefits for her medical condition.

The ALJ concluded:

> 7. Whatever the nature of Elshaug's medical condition, she has failed to establish by a preponderance of the evidence that her medical condition is a disease that can be fairly traceable to her employment as a compensable injury within the meaning of N.D.C.C. § 65–01–02(9) (1995) for which she is entitled to workers' compensation benefits.

The ALJ recommended an order affirming WSI's June 25, 1997, and January 28, 1998, orders denying further benefits. With the exception of one sentence in a finding of fact, WSI adopted the ALJ's recommended findings, conclusions, and order, on November 16, 2001.

[¶ 8] By letter of December 12, 2001, Elshaug sought reconsideration. On January 9, 2002, WSI remanded the matter to the ALJ to consider additional information. On May 3, 2002, the ALJ recommended an order affirming WSI's November 16, 2001, final order. WSI adopted the ALJ's recommended order as its final order on June 28, 2002.

[¶ 9] Elshaug appealed to the district court. The district court found "Elshaug continues to suffer from a chemical exposure at the laundry which has sensitized her to numerous other chemicals in her environment and leaves her unable to perform her job because of a work related condition." The district court judgment entered on January 28, 2003, ordered WSI to recognize the compensability of Elshaug's medical condition, accept her reapplication for disability benefits, and provide appropriate benefits.

## II

[¶ 10] Section 65–01–02(9), N.D.C.C., in effect when Elshaug's claims arose, defined a compensable injury, in part, as "an injury by accident arising out of and in the course of employment which must be established by medical evidence supported by objective medical findings," including "[a]ny disease that can be fairly traceable to the employment."

[¶ 11] A claimant has the burden of proving a right to receive workers compensation benefits or to continued benefits if they are terminated after liability for a claim has been accepted. *Unser v. N.D. Workers Comp. Bureau*, 1999 ND 129, ¶ 22, 598 N.W.2d 89. A claimant must establish by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury. *Rush v. N.D. Workers Comp. Bureau*, 2002 ND 129, ¶ 6, 649 N.W.2d 207. Confronted with a classic "battle of the experts," a factfinder may rely upon either party's expert witness. *Byron v. Gerring Indus., Inc.*, 328 N.W.2d 819, 822 (N.D.1982). We have said, however, that "[t]hough the Bureau may resolve conflicts between medical opinions, the authority to reject medical evidence selectively does not permit the Bureau to pick and choose in an unreasoned manner." *Negaard–Cooley v. N.D. Workers Comp. Bureau*, 2000 ND 122, ¶ 19, 611 N.W.2d 898.

[¶ 12] On appeal from a district court's review of an administrative agency's decision, we review the agency decision. The district court's analysis is entitled to respect if its reasoning is sound, because the legislatively-mandated district court review cannot be ineffectual. *Kraft v. State Bd. of Nursing*, 2001 ND 131, ¶ 10, 631 N.W.2d 572. We exercise a limited review in appeals involving WSI decisions. *Rush v. N.D. Workers Comp. Bureau*, 2002 ND 129, ¶ 5, 649 N.W.2d 207. Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Barnes v. Workforce Safety and Ins.*, 2003 ND 141, ¶ 9, 668 N.W.2d 290. "We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record." *Id.* "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Id.*

[¶ 13] The opinions of Elshaug and her physicians are based on their view that multiple chemical sensitivity is a disease. The physicians' opinions upon which WSI relies are based on their view that multiple chemical sensitivity is not a disease. Elshaug's "claim involved a credibility choice between the expert medical opinions" of the physicians upon whom she relied and those of the physicians upon whom WSI relied. *Otto v. N.D. Workers Comp. Bureau*, 533 N.W.2d 703, 707 (N.D. 1995). "The bureau is responsible for weighing the credibility of medical evidence." *Id.*

[¶ 14] In his September 19, 2001, recommended findings of fact, conclusions of law, and order, the ALJ found "I am not convinced that it is more likely than not that Elshaug's medical condition, diagnosed as MCS, is a disease." The ALJ found "there is not enough evidence of record to determine whether or not MCS is a disease," and concluded:

7. Whatever the nature of Elshaug's medical condition, she has failed to establish by a preponderance of the evidence that her medical condition is a disease that can be fairly traceable to her employment as a compensable injury within the meaning of N.D.C.C. § 65–01–02(9) (1995) for which she is entitled to workers' compensation benefits.

[¶ 15] The ALJ and WSI found there was not enough evidence to determine if MCS is a disease. We have some concern about WSI's position before the ALJ that the claim should be denied in reliance on one expert witness who "does not consider this disease a real entity." But on this appeal, we need not resolve whether MCS is a disease, because, on this record, we conclude a reasoning mind could reasonably find, as WSI also did, that, whatever the nature of her medical condition, Elshaug failed to prove it is fairly traceable to her employment. Here, as in *Halseth v. N.D. Workers Comp. Bureau*, 514 N.W.2d 371, 374 (N.D.1994), "[t]he Bureau explained its reasons for relying on medical evidence supporting a denial of benefits and for not relying on the evidence supporting" Elshaug's claim. "We believe the Bureau fairly and reasonably construed the evidence in the record to reach a conclusion which we may not overturn under our standard of review." *Id.*

III

[¶ 16] The district court judgment is reversed and the matter is remanded for entry of a judgment affirming WSI's orders of June 28, 2002, and November 16, 2001, affirming its earlier orders denying further benefits.

[¶ 17] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ. and JAMES M. BEKKEN, District Judge, concur.

[¶ 18] The Honorable JAMES M. BEKKEN, District Judge, sitting in place of KAPSNER, J., disqualified.