2004 ND 100

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Matthew GUTHMILLER, Defendant and Appellant.**

**No. 20030298.**

Supreme Court of North Dakota.

May 7, 2004.

Michelle Ilene Schulz, Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

Kent M. Morrow, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Matthew David Guthmiller appealed a judgment on his conditional plea of guilty and an order denying his motion to suppress evidence. We conclude there is sufficient evidence to support the trial court's denial of Guthmiller's suppression motion, and we affirm.

[¶ 2] Guthmiller was arrested for possession of drug paraphernalia, in violation of N.D.C.C. § 19–03.4–03, and minor in possession or minor in consumption of an alcoholic beverage, in violation of N.D.C.C. § 5–01–08. Guthmiller moved to suppress evidence found at his residence.

[¶ 3] At a hearing on Guthmiller's suppression motion, Officer Vanderhoef of the Mandan Police Department testified: (1) on May 9, 2003, he and Detective Ternes took a minor female into custody for being a minor in consumption of alcohol; (2) the minor female said she had been drinking at Guthmiller's residence and that there were others there; (3) as he was going to Guthmiller's residence, he met Guthmiller and took him into custody for minor in consumption; (4) in his initial contact with Guthmiller, he asked Guthmiller where an empty rum bottle at his feet came from, and Guthmiller "indicated it must have blown in on a tumbleweed"; and (5) the officers knocked on the front door, identified themselves as police officers, and saw a glass smoking device on a table through a window to the right of the door. Vanderhoef testified Guthmiller consented to their entry into the house:

Q   Okay. At any time during this evening had you received permission from Mr. Guthmiller to actually go in the house?

A   He had—yes. We had asked him if—before he was taken to the jail I asked him, do you want me to have everybody leave the residence and lock the doors.

Q   Okay.

A   And he said yes. I asked him if it was okay and he said yes.

Q   Okay. So at that point you did have permission to go in the residence?

A   Correct.

On cross-examination by Guthmiller's attorney, Vanderhoef testified that Guthmiller never asked for a copy of a search warrant to go into the house, and further testified:

A   I asked him what do you want to do with the people in the house, do you want them to leave and lock the door or what do you want me to do and he said yes.

Q   Did you ever ask him specifically, Matt, can I go into your house and look around—

A   No, I did not.

On direct examination, Guthmiller testified:

A   ... I told him before he could go into my house he would need a search warrant. Which he said we'll take care of that, don't worry about that.

Q   Do you recall him asking you if there was anybody else in the house?

A   Yes, and I said yes.

Q Okay. Do you recall him asking if you wanted the officer to go in to the house and tell the people there to get out and—

A Well, no. I told him that he could tell everybody to come outside and they could take care of whatever they need to out there.

Q In your mind, did you ever give the officer permission to go into the house?

A No, I did not.

On cross-examination, Guthmiller testified:

Q Okay. And you did tell him he could tell everyone else to come outside?

A Yeah, come outside.

Q Okay. And to do that, he would have to go in the home, right?

A No, he'd just have to knock on the door.

■ [¶ 4] The trial court denied Guthmiller's suppression motion:

Based on the evidence before me in this matter I am going to deny the motion to suppress. Plain view requires that the police be in an area where they have a right to be. So seeing something through a window isn't plain view, you can't enter then to seize it. However, in this case I'm finding based on the testimony that the defendant told the officers that they could remove people from the house and lock it. It wouldn't be reasonable to assume that they would be able to do that without making at least some limited entry into the house. In making that limited entry, the item which they believed to be drug paraphernalia was in plain view and since they were in an area where they had a right to be, they had a right to seize it. So the motion to suppress is denied.

Guthmiller entered a conditional plea of guilty to the charge of possession of drug paraphernalia and the trial court issued a sentencing order. On appeal, Guthmiller contends the trial court erred in determining he had given police officers permission to enter his house, where paraphernalia was in plain view.

■ [¶ 5] "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "A search without a valid search warrant is unreasonable unless the state shows that the search comes within an exception to the general rule of exclusion." *State v. Frank*, 350 N.W.2d 596, 599 (N.D.1984). One such exception is voluntary consent, free from explicit or covert coercion. *Id.* "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801.

■■ [¶ 6] In an appeal from an order issued on a suppression motion, we accord great deference to the trial court:

[W]e defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We affirm the district court's decision unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence.

*State v. Bergstrom*, 2004 ND 48, ¶ 10, 676 N.W.2d 83 (quoting *State v. Matthews*, 2003 ND 108, ¶ 8, 665 N.W.2d 28 (internal citations and quotations omitted)).

■ [¶ 7] The trial court hears the witnesses, sees their demeanor on the stand, and is in a position to determine the credibility of witnesses. *Wellens v. Beck*, 103 N.W.2d 281, 285 (N.D.1960). On the

other hand, this Court on appeal has before it "but a cold and lifeless record" and has "not the advantage ... of the innumerable intangible indicia that are so valuable to a trial judge." *Doyle v. Doyle,* 52 N.D. 380, 389, 202 N.W. 860, 863 (1925). Thus, the trial court is in a much better position to ascertain the true facts than an appellate court relying on a cold record. *State v. Gagnon,* 1997 ND 153, ¶ 8, 567 N.W.2d 807. Credibility "denotes '[t]he quality that makes something (such as a witness or some evidence) worthy of belief,'" while demeanor "relates to '[o]utward appearance or behavior, such as facial expressions, tone of voice, gestures, and the hesitation or readiness to answer questions.'" *Haebe v. Department of Justice,* 288 F.3d 1288, 1300 n. 27 (Fed.Cir. 2002) (quoting Black's Law Dictionary 374, 442 (7th ed. 1999)). *See also U.S. v. Shonubi,* 895 F.Supp. 460, 480 (E.D.N.Y.1995) (demeanor includes facial expressions and body language). "The words used are by no means all that we rely on in making up our minds about the truth of a question." *Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952) (Learned Hand, Judge). In weighing the evidence and assessing the credibility of a witness, a trier of fact may consider:

> any facts or circumstances in the case which tend to strengthen, weaken, or contradict a witness's testimony. You may consider age, intelligence, and experience; strength or weakness of recollection; how a witness came to know the facts to which the witness testified; possible interest in the outcome of the trial; any bias or prejudice a witness may have; manner and appearance; whether a witness was frank or evasive; and whether the testimony was reasonable or unreasonable.

NDJI–CRIMINAL K–5.04 (1998). *See also State v. His Chase,* 531 N.W.2d 271, 274 (N.D.1995) (approving similar language in former N.D.J.I. No. 2101).

[¶ 8] From our review of the record, according appropriate deference to the trial court in light of its superior opportunity to observe the witnesses and assess their credibility in determining the objective reasonableness of what Guthmiller and the officers understood from their exchange, and resolving conflicts in testimony in favor of affirmance, we conclude there is sufficient evidence to support the trial court's finding that Guthmiller consented to the entry of his residence. Therefore, the trial court's order on the suppression motion is not against the manifest weight of the evidence.

[¶ 9] Affirmed.

[¶ 10] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., and GORDON O. HOBERG, Surrogate Judge, concur.

[¶ 11] The Honorable GORDON O. HOBERG, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.