2005 ND 43

**Sharon VOGEL, Claimant and Appellant,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee,**

and

**Burleigh County, Respondent.**

**No. 20040173.**

Supreme Court of North Dakota.

Feb. 23, 2005.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for appellee.

NEUMANN, Justice.

[¶ 1] Sharon Vogel appealed a district court judgment, order for judgment, and order affirming a Workforce Safety and Insurance ("WSI") order adopting a temporary administrative law judge's recommended findings of fact, conclusions of law, and order affirming a WSI order denying disability benefits. We affirm.

I

[¶ 2] While employed as a Burleigh County Sheriff's Department detention supervisor earning $2,613 per month, Vogel poked her finger with a lancet on July 12, 2001, while helping a diabetic inmate check his blood sugar. Vogel sought workers compensation benefits and after a denial of disability benefits received a hearing before a temporary administrative law judge ("TALJ"). The TALJ recommended findings of fact stating, among other things: (1) After Vogel was diagnosed with hepatitis C, her job duties were changed to eliminate almost all contact with inmates; (2) Vogel's salary was reduced upon modification of her job duties, but, in January 2002, she received back pay for the difference in salary between her former detention supervisor salary and the salary for her modified position; (3) Vogel suffered no wage loss through January 2002; (4) "Vogel was extremely frustrated and unhappy in her modified detention center position;" (5) Vogel "decided to apply for another position, feeling it would be the best thing for her and for Burleigh County;" (6) Vogel inquired about a Public Ser-

vice Technician III ("PST III") position involving the same duties as her modified position; (7) "The detention supervisor position Vogel held at the time of her work injury on July 12, 2001, was a grade 7, the detention officer position was a grade 6, and the PST III position was a grade 4;" (8) "Although Vogel looked at the lower level position because she thought it would be best for everyone if she were not in the detention center, she did not believe any change would include a salary reduction;" (9) "Vogel had no salary reduction in her modified detention center position;" (10) "If Vogel had not accepted the PST III position on January 23, 2002, Burleigh County would have continued employing Vogel in the modified detention center position;" and (11) Vogel received her first paycheck as a PST III at the end of February 2002, at a salary of $2,200 per month. The TALJ also recommended the following findings of fact:

35. Although Vogel was undeniably aware of her actual PST III salary by the end of February 2002, she did nothing to try and get her old job back on the grounds she had mistakenly assumed the new job carried no reduction in salary. Schatz–Jennings [Burleigh County's human resources officer] was unaware Vogel had any pay or position concerns until October or November of 2002....

36. Vogel's failure to raise any concerns about the lower pay directly with Schatz–Jennings and her failure to even inquire about the possibility of getting her modified job back because she would not have accepted the lower position had she known her salary would be reduced is not reasonable....

40. The greater weight of the evidence indicates that Vogel voluntarily limited her income when she accepted and remained in the PST III position.... Vogel's subjective feelings that she was unfairly ostracized and underutilized do not amount to her being constructively forced out of the modified detention center position when she also testified she thought it was in the best interests of both herself and her employer that she get out of the detention center. Assuming Vogel's initial acceptance of the PST III position could be considered voluntary only if her stated assumption that she would incur no salary reduction was in fact true, that "conditional" voluntary acceptance was valid only until she knew her assumption was not correct. The actual income limitation became voluntary when Vogel admittedly did nothing to see if she could get her old job back or to let anyone in her employment setting other than Sheriff Harvey know she was upset and concerned about the lower pay.

[¶ 3] The TALJ recommended the following conclusions of law, among others:

2. Under the provisions of N.D.C.C. § 65–05–08(7), if an employee voluntarily limits income or refuses to accept employment suitable to the employee's capacity, the employee is entitled to disability benefits during the time the employee limits income or refuses to accept suitable employment only if WSI determines the limitation or refusal is justified.

. . . .

6. The claimant has not met her burden of proving that her loss of earning capacity effective February 1, 2002, was not a voluntary limitation of income.

7. The claimant has not met her burden of proving that her voluntary limitation of income was justified.

8. The claimant has not met her burden of proving she is entitled to disability benefits in connection with this claim.

[¶ 4] The TALJ recommended an order affirming WSI's January 15, 2003, order denying disability benefits. On November 4, 2003, WSI adopted the TALJ's recommended findings, conclusions, and order. Vogel appealed to the district court, which affirmed WSI's order. Vogel appealed to this Court, raising the following issue: "Did Sharon Vogel unreasonably and voluntarily limit her income, thus losing her entitlement to partial disability benefits under N.D.C.C., Section 65–05–08?"

## II

■ [¶ 5] Vogel has challenged only findings of fact 36 and 40, and conclusions of law 6, 7, and 8. This Court has a limited role in appeals from administrative agency decisions:

We exercise a limited review in appeals involving WSI decisions. *Rush v. N.D. Workers Comp. Bureau*, 2002 ND 129, ¶ 5, 649 N.W.2d 207. Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Barnes v. Workforce Safety and Ins.*, 2003 ND 141, ¶ 9, 668 N.W.2d 290. "We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record." *Id.* "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Id. Elshaug v. Workforce Safety & Ins.*, 2003 ND 177, ¶ 12, 671 N.W.2d 784.

■ [¶ 6] " 'The words used are by no means all that we rely on in making up our minds about the truth of a question.' " *State v. Guthmiller*, 2004 ND 100, ¶ 7, 680 N.W.2d 235 (quoting *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir.1952)). Like a trial court judge, an administrative law judge "hears the witnesses, sees their demeanor on the stand, and is in a position to determine the credibility of witnesses," and is, therefore, "in a much better position to ascertain the true facts than an appellate court relying on a cold record" without " 'the advantage . . . of the innumerable intangible indicia that are so valuable to a trial judge.' " *Guthmiller*, at ¶ 7 (quoting *Doyle v. Doyle*, 52 N.D. 380, 389, 202 N.W. 860, 863 (1925)). Thus, "[w]e defer to the hearing officer's opportunity

to judge the credibility of witnesses." *Aamodt v. North Dakota Dep't of Transp.*, 2004 ND 134, ¶ 12, 682 N.W.2d 308. *See also Reynolds v. North Dakota Workmen's Comp. Bureau*, 328 N.W.2d 247, 251 (N.D. 1982).

[¶ 7] Vogel testified, among other things: (1) After she learned she had hepatitis C, she was placed in a modified position; (2) While the modified position was a demotion from her preinjury position, it did not result in a salary reduction; (3) In the modified position, "I felt that I was being wasted sitting in the control room ... and they put me a room where I couldn't talk to anybody or have any contact with anyone;" (4) She asked to do other duties "along with being in the control room and doing the visitation and filing and answering the phones;" (5) She applied for and received another job, a PST III, which involved the same duties she was performing in her modified detention position; (6) She first learned she would be receiving $2,200 a month when she got her paycheck after starting the PST III position; and (7) She "was very upset" and "spoke to the sheriff," who "just said that that's what it paid."

[¶ 8] Vogel also testified: (1) She felt "stagnant," and "underutilized;" (2) She wanted to do other duties for which she "brought more to the table and would be a better asset," and she was frustrated that she was not being provided those other duties; (3) She did not talk to the sheriff about getting her old job back and did not "talk with the HR director for Burleigh County, Miss Jennings;" and (4) She does not recall raising with Jennings "a concern about the pay at all." Vogel further testified about why she applied for a job with duties similar to those in her modified detention position:

    A.  Because I feel that I was a hindrance in the jail as far as I was taking up a slot that they could not have a female to perform the duties that I should have been doing, such as female being on call. And I thought it was in the best interest, bottom line, for the jail so that they could get a female up there that could do the job where I knew I would never be able to do anything again.

  . . . .

    A.  Like I said, I was—I was always tucked away so that I wouldn't have any contact with anybody. And the fact that I was taking up a slot in the jail, especially, for better words, a female slot so that someone could actually deal with the inmates and strip-search females and that kind of thing, I thought it was the best thing for not only myself, but Burleigh County.

[¶ 9] Thus, there is evidence supporting WSI's finding that by accepting and remaining in the PST III position, Vogel voluntarily limited her income. From our review of the record, we conclude that the challenged findings of fact are supported by a preponderance of the evidence, as a reasoning mind could reasonably find from the evidence as WSI did. We further conclude that the challenged conclusions of law are supported by WSI's findings of fact.

### III

[¶ 10] The judgment and orders are affirmed.

[¶ 11] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DALE V. SANDSTROM, JJ., concur.

[¶ 12] The Honorable RONALD L. HILDEN, D.J., sitting in place of KAPSNER, J., disqualified.

HILDEN, District Judge, dissenting.

[¶ 13] After having reviewed the convoluted factual and procedural histories of this case, I find it impossible to concur with the temporary administrative law judge's (TALJ) opinion that by accepting and remaining in the PST III position, Sharon Vogel voluntarily and unjustifiably limited her income. The challenged findings of fact are not supported by a preponderance of the evidence and the challenged conclusions of law cannot be supported by these erroneous findings of fact.

[¶ 14] The majority's reasoning hinges on two often-used rules of construction. The first states "we decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record." *Barnes v. Workforce Safety and Insurance*, 2003 ND 141, ¶ 9, 668 N.W.2d 290. The second states, generally, that because the TALJ hears the witnesses and sees their demeanor, it is in a better position to ascertain the true facts. *See State v. Guthmiller*, 2004 ND 100, ¶ 7, 680 N.W.2d 235. The Court relies upon these rules on a regular basis, however, the strict and unwavering adherence to these rules in this circumstance denies Sharon Vogel the meaningful review she deserves from this Court. The TALJ's findings of fact and conclusions of law simply cannot be reconciled with the evidence in this case, regardless of who observes the testimony. Logic and common sense demand a different conclusion when one views Sharon Vogel's situation as a whole; beginning from the time she originally contracted Hepatitis. For this reason, I must respectfully dissent.

[¶ 15] Clearly, Ms. Vogel was, and is, intimidated, downtrodden, and suffering from depression; and for good reason. She contracted Hepatitis while checking the blood sugar of an inmate during the regular course of her employment. She incurred medical expenses and was required to change positions due to this injury. This new position was coupled with a surprising reduction in pay. Her complaints and requests were met with staunch opposition from her employer. Although she was ultimately successful, she struggled mightily to be compensated for this life-threatening disease and for the loss of income associated with it.

[¶ 16] Ms. Vogel then requested another change due to her continued unhappiness with the modified detention center position. After everything that had transpired between Ms. Vogel, the WSI, and her employer, it is reasonable to assume she believed her position would not, again, be coupled with a decrease in pay for which she would have to go through more litigation to remedy. But to her chagrin, the job did have lower pay. She complained to her superior officer, Sheriff Harvey, about the reduction in pay. He did nothing, and recommended nothing, to remedy the situation. She did not contact the HR director, Ms. Schatz–Jennings at this point, and instead commenced these proceedings. She has been denied benefits by the North Dakota WSI and now the temporary administrative law judge has concluded that her alternative employment and decreased compensation were voluntary, unjustified and therefore, do not warrant compensation. I cannot agree.

[¶ 17] What one must remember is that Sharon Vogel was content in her original job and that she was injured while doing it, forcing her into this seemingly unending struggle for compensation. Every problem that has arisen since the injury (the changes in jobs and their accompanying reduction in pay) is directly correlated to that injury. Despite this, the TALJ concluded that this final decision to change her employment was, somehow, voluntary.

Reality would show quite the contrary. If Sharon Vogel had not been injured during her employment, she would not have been forced to alter her employment in the first place. Her subsequent search for comparative, fulfilling employment was not only involuntary, but completely justified considering the circumstances.

[¶ 18] Also, it is illogical to conclude that because Sharon Vogel did not contact her HR director she had, somehow, ratified the reduction in pay and was estopped from demanding compensation. She had already complained to her superior officer, Sheriff Harvey, and was told there was nothing that could be done. Puzzling, is why the TALJ places so much credence in the advice of the HR director, while completely discounting the futile discussion Ms. Vogel had already had with her own commanding officer. Similarly perplexing, is why Sharon Vogel would be required to entertain any advice from Ms. Schatz–Jennings, considering the scurrilous nature of a letter written by Ms. Schatz–Jennings, in which she condemned Ms. Vogel for her association with known drug users and motorcycle riders. (Gasp!) A complaint to this person, considering the parties' history, would have been meaningless.

[¶ 19] It is apparent from the evidence that Sharon Vogel was a person forced from her job by an employment related injury. She has been searching, with considerable opposition, for a substitute position with comparable pay and personal satisfaction. The TALJ's finding that Ms. Vogel "voluntarily" limited her income by seeking a change from a position she was not happy with and by not contacting the HR director when she learned of the lower pay scale, is not supported by the preponderance of the evidence. The majority's affirmation of such a decision, based superficially upon a rule of construction, denies Sharon Vogel a meaningful review.

[¶ 20] I would reverse and remand to the agency for calculations of the benefits to which she is entitled.

[¶ 21] RONALD L. HILDEN, D.J.