2005 ND 52

**Mitchell G. THOMAS, Claimant and Appellant,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee,**

and

**Primewood Transportation Services, Inc., Respondent.**

No. 20040311.

Supreme Court of North Dakota.

March 4, 2005.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Nilles, Hansen & Davies, Fargo, N.D., for appellee.

NEUMANN, Justice.

[¶ 1] Mitchell G. Thomas appealed from a district court judgment affirming a Workforce Safety and Insurance ("WSI") order adopting an administrative law judge's recommended findings of fact, conclusions of law, and order affirming WSI's earlier order denying Thomas further disability and vocational rehabilitation benefits. We affirm.

I

[¶ 2] Thomas injured his back while working as a truck driver in 1995. WSI accepted Thomas' claim for benefits and awarded medical, disability and rehabilitation benefits. Bryce Nelson, an occupational therapist, performed a functional capacity assessment, known as a KEY Functional Assessment. Nelson determined that, because of inconsistencies in five of six criteria, the results of the assessment represented a manipulated effort and an invalid representation of Thomas' physical capabilities. WSI issued an order denying further disability and vocational rehabilitation benefits.

[¶ 3] After an evidentiary hearing conducted at Thomas' request, an administrative law judge ("ALJ") recommended the following finding of fact:

15. The greater weight of the evidence showing that Thomas knowingly sought to manipulate the results of the FCA for his vocational rehabilitation, he is therefore "in noncompliance with vocational rehabilitation" without good cause within the meaning of N.D.C.C. § 65–05.1–04(6).

The ALJ recommended the following conclusions of law:

2. WSI has carried its burden in this case to show by a greater weight of the evidence that Thomas failed to comply

with the requirements for his vocational rehabilitation by knowingly manipulating the results of the FCA. A willful failure to give maximum consistent effort, to fully and honestly participate, for a functional capacity assessment can constitute an act of noncompliance under N.D.C.C. § 65–05.1–04(6). *Id.* at ¶ 21.

. . . .

5. The greater weight of the evidence showing that Thomas knowingly sought to manipulate the results of the FCA for his vocational rehabilitation, he is therefore "in noncompliance with vocational rehabilitation" without good cause within the meaning of N.D.C.C. § 65–05.1–04(6). This being his second instance of "noncompliance with vocational rehabilitation," in accordance with the provisions of the statute WSI may not pay any further disability or vocational rehabilitation benefits, and the order issued by WSI May 25, 2003, denying Thomas further disability and vocational rehabilitation benefits must be affirmed.

The ALJ recommended an order affirming WSI's earlier order denying Thomas any further disability or vocational rehabilitation benefits. WSI adopted the ALJ's recommended findings of fact, conclusions of law, and order as its final order. Thomas appealed to the district court, which affirmed WSI's order.

## II

[¶ 4] On appeal to this Court, Thomas raised the following issue: "Did Mitchell Thomas engage in intentional noncompliance without good cause?"

[¶ 5] This Court exercises a limited review in cases like this one:

Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Barnes v. Workforce Safety and Ins.,* 2003 ND 141, ¶ 9, 668 N.W.2d 290. "We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record." *Id.* "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Id.* *Elshaug v. Workforce Safety and Ins.,* 2003 ND 177, ¶ 12, 671 N.W.2d 784.

■ Section 65–05.1–04(6), N.D.C.C., provides, in part:

> If, without good cause, the injured employee fails to attend a scheduled medical or vocational assessment, fails to communicate or cooperate with the vocational consultant, or fails to attend a specific qualified rehabilitation program within ten days from the date the rehabilitation program commences, the employee is in noncompliance with vocational rehabilitation.... In all cases of noncompliance by the employee, the organization, by administrative order, shall discontinue disability and vocational rehabilitation benefits. If, after issuance of the order, the period of noncompliance continues for thirty days, or a second instance of noncompliance occurs without good cause, the organization may not pay any further disability or vocational rehabilitation benefits, regardless of whether the employee sustained a significant change in medical condition due to the work injury.

■ [¶ 6] A willful failure to give a maximum consistent effort in a functional capacity assessment can constitute noncompliance with vocational rehabilitation under N.D.C.C. § 65–05.1–04(6). *Hoffman v. North Dakota Workers Comp. Bureau*, 2002 ND 138, ¶ 21, 651 N.W.2d 601. Relying on Nelson's testimony that the results of Thomas' KEY Functional Assessment represented a manipulated effort and an invalid representation of Thomas' physical capabilities, and discounting Thomas' testimony and the opinion of Thomas' treating physician, Dr. Martire, WSI found that "Thomas knowingly sought to manipulate the results of the FCA [functional capacity assessment] for his vocational rehabilitation" and "he is therefore 'in noncompliance with vocational rehabilitation' without good cause within the meaning of N.D.C.C. § 65–05.1–04(6)."

From our examination of the record, we conclude that a reasoning mind could reasonably find, as WSI did, that its finding of noncompliance was proven by the weight of the evidence on the entire record.

■ [¶ 7] Thomas contends WSI may not rely on the KEY Functional Assessment in denying benefits because there is no statute or rule authorizing its use. Thomas has not drawn our attention to any authority for holding WSI was prohibited from reliance on Nelson's testimony about Thomas' performance on the KEY Functional Assessment. Thomas' reliance on decisions such as *Saari v. North Dakota Workers Comp. Bureau*, 1999 ND 144, ¶ 23, 598 N.W.2d 174, and decisions cited therein, is misplaced. Those decisions hold that when the legislature specifies use of a particular standard or protocol in determining permanent partial impairment claims, WSI must use the correct edition. Here, the legislature has not specified the use of any particular standard or protocol in determining a claimant's functional capacities for rehabilitation.

[¶ 8] Thomas asserted in his brief on appeal that a WSI employee may have improperly communicated with a member of WSI's legal department, who may have communicated with WSI's litigation counsel without disclosing such communications. However, counsel conceded there was no record evidence of ex parte contact. Therefore, we will not address this assertion.

■ [¶ 9] WSI must "adequately explain its reasons for disregarding medical evidence favorable to the claimant." *Barnes v. Workforce Safety and Ins.*, 2003 ND 141, ¶ 20, 668 N.W.2d 290. Thomas argues WSI ignored Dr. Martire's opinion "that Mr. Thomas had not manipulated his FCA results, that an invalid KEY FCA does not evidence intentional manipulation,

and that Mr. Thomas was functioning within the limit of his abilities."

[¶ 10] In the following finding of fact, WSI addressed the opinion of Dr. Martire:

14. Considering the evidence of the testimony of Mr. Nelson concerning the methodology of the KEY Functional Assessment and the bases for the determination that the results of the FCA for Thomas were inconsistent and therefore invalid as a manipulated effort by Thomas, together with the testimony of Thomas and Dr. Martire to explain those results as Thomas' reasonable effort in the circumstances and, in any case, not a manipulated effort (*i.e.*, a knowing attempt to manipulate the results of the FCA), the greater weight of the evidence establishes the validity of the methodology for the FCA and supports Mr. Nelson's conclusions.

Dr. Martire's opinion that the methodology used for the determination of the validity of the results of the KEY Functional Assessment is subjective as the observations of the person conducting the assessment (contrasted with the methodology for other systems and methodologies for functional capacity assessments using objective indicators of invalid results) certainly militates against Mr. Nelson's conclusions. But that opinion is not supported by any specific information and explanation to show how any [ ] purported deficiency of the KEY Functional Assessment as administered by Mr. Nelson for Thomas incorrectly indicated that the results were inconsistent and therefore invalid. Absent that information and explanation, Dr. Martire's opinion is insufficient to overcome the evidence of the testimony of Mr. Nelson explaining the tasks for the FCA and the bases for his conclusions.

The testimony of both Thomas and Dr. Martire suggesting that factors and circumstances other than Thomas' manipulated effort would account for the inconsistent results of the FCA is not persuasive when considered in juxtaposition with Mr. Nelson's testimony explaining the methodology of the FCA, the specific inconsistencies, and the significance of those inconsistencies. Having to choose between Thomas and Dr. Martire on one side of the question and Mr. Nelson on the other, the greater weight of the evidence overwhelmingly favors Mr. Nelson.

We conclude WSI addressed Nelson's testimony and Dr. Martire's opinion extensively and adequately explained its reasons for disregarding Dr. Martire's medical evidence favorable to Thomas.

III

[¶ 11] Affirmed.

[¶ 12] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.