2006 ND 70

**Lanis TOSO, Claimant and Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee.**

No. 20050143.

Supreme Court of North Dakota.

April 3, 2006.

Rehearing Denied May 17, 2006.

Reed K. Mackenzie (argued), Mackenzie Dornik, Minneapolis, MN, and Joel F. Arnason (appeared), Rosenquist & Arnason, Grand Forks, ND, for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Lanis Toso appealed from a district court judgment affirming an order of Workforce Safety and Insurance ("WSI"). WSI issued an order affirming WSI's right to apply the subrogation statute and to allow WSI to collect 50% of the settlement award Toso received in a third-party action. Toso appealed WSI's order to the district court. The district court affirmed WSI's order. On appeal to this Court, Toso argues WSI had no right to apply the subrogation statute to the settlement award because the damages in the third-party action were not related to Toso's medical expenses and disability benefits paid by WSI. We affirm.

I

[¶ 2] On September 3, 1999, Lanis Toso filed a claim for workers compensation benefits in connection with an injury to his left heel which occurred August 25, 1999, while employed as a semi driver. WSI accepted the claim and awarded Toso benefits. Toso received disability benefits,

and WSI paid medical expenses for treatment related to his injury. Disability benefits were discontinued when Toso returned to work.

[¶ 3] In June of 2001, Toso commenced a third-party action against Orthopaedic Associates and Dr. Jeffrey Stavenger, alleging negligence in the treatment of Toso's heel injury. Correspondence contained in the record, in the form of letters exchanged between Toso's attorney and WSI, shows notice of the third-party action was given to WSI. In the third-party action, Toso contended the alleged negligent treatment did not increase his temporary disability or his medical expenses incurred because of the work-related injury. Toso contended he would have suffered the same temporary disability and medical expense damages had the negligence not occurred. Rather, Toso alleged the only damage caused by the alleged negligent treatment was that the surgery was less successful than it might have been if no negligence had occurred and that, as a result, Toso incurred a greater permanent disability because of the negligence. WSI did not pay Toso permanent disability benefits.

[¶ 4] Toso's third-party action was settled out of court with the defendants agreeing to pay Toso $82,500. Because the case settled out of court, the trial court made no determination whether the settlement damages arose out of the work injury. The record does not contain a settlement agreement setting out what damages the settling defendants were paying for.

[¶ 5] WSI applied the subrogation statute, N.D.C.C. § 65–01–09, to the entire settlement award which allowed WSI to collect 50% of the settlement award for reimbursement for money it paid for Toso's medical expenses and disability payments. After Toso requested reconsideration of this order, Toso and WSI agreed to submit the dispute to an Administrative Law Judge ("ALJ").

[¶ 6] The ALJ's recommended decision found Toso failed to prove WSI's subrogation interest under N.D.C.C. § 65–01–09 was improperly applied to his claim. The ALJ found the settlement damages arose out of the work injury and recommended WSI's order be affirmed. WSI then issued a final order adopting the ALJ's recommended decision.

II

[¶ 7] On appeal, we review the decision of WSI, not the district court, although the district court's analysis is entitled to respect. *Zander v. Workforce Safety and Ins.*, 2003 ND 194, ¶ 6, 672 N.W.2d 668. We review WSI's decision in the same manner as the district court under N.D.C.C. § 28–32–46. *Id.* The district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

▪ [¶ 8] In evaluating WSI's findings of fact, we do not make independent findings or substitute our judgment for that of WSI, rather, we determine only whether WSI reasonably reached its factual conclusions from the weight of the evidence on the entire record. *Hopfauf v. N.D. Workers Comp. Bur.*, 1998 ND 40, ¶ 8, 575 N.W.2d 436. We affirm WSI's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Id.*

[¶ 9] In this case we are asked to decide whether the language of the subrogation statute at N.D.C.C. § 65–01–09 allows WSI to apply the subrogation statute to Toso's settlement award. WSI applied the subrogation statute to Toso's settlement award based on its determination that the settlement damages arose out of the work injury. Toso disagreed with that application arguing the settlement damages did not arise out of the work injury.

[¶ 10] WSI argues the district court should not have reached the merits of Toso's claims but should have summarily affirmed WSI's order because Toso failed to file a specifications of error as required by N.D.C.C. § 28–32–42(4). *Vetter v. N.D. Workers Comp. Bur.*, 554 N.W.2d 451 (N.D.1996). Whether we decide this case based on the lack of a proper specifications of error or based on Toso's issue, we still reach the same decision in affirming WSI's

order without deciding the merits of the issue placed before us.

[¶ 11] WSI contends this is a simple matter of statutory requirement. WSI argues the application of N.D.C.C. § 65–01–09 is not limited only to damages for medical expense, disability, vocational rehabilitation, or permanent impairment that may have been recovered in a third-party action. Rather, WSI argues N.D.C.C. § 65–01–09 provides that WSI is subrogated to the rights of the injured employee to the extent of fifty percent of the damages recovered in a third-party action regardless of the nature of the damages recovered.

▪ [¶ 12] Even if we were to agree with Toso's position that WSI is not subrogated to any damages that do not arise out of the work injury, we still could not grant Toso's requested relief because, for the purposes of this case, we would look no further than the issue of whether Toso's settlement damages were damages that arose out of his work injury. The record provides little or no evidence to help us make that determination. Paragraph four of Toso's complaint in the third-party action provides that as a consequence of the defendants' negligence, Toso sustained injuries to his heel which have and will cause him pain, discomfort, and disability, will cause him to incur medical expenses in the future, and will impair his future earning capacity. The issue of whether Toso's settlement damages arose out of his work injury was never litigated in court nor does the record contain a settlement agreement which speaks to that issue. Toso has known WSI's position throughout the duration of this case. Toso was aware WSI intended to apply the subrogation statute to the settlement award. Although the statute provides WSI's subrogation interest may not be reduced by settlement, Toso had the opportunity to structure the settlement to indicate exactly what the

damages covered. However, the record does not contain a settlement agreement and therefore gives us no information as to the type of damages the settlement award covered. N.D.C.C. § 65–01–09. We are left to speculate as to whether Toso's settlement damages arose out of his initial work injury.

[¶ 13] The burden was on Toso to prove that the settlement damages caused by the alleged third-party negligence did not arise out of his initial work injury. N.D.C.C. § 65–01–09. Once a claimant gives notice to WSI that the claimant is going to pursue an action against a third-party, we believe the claimant has the burden of proof as to whether the damages caused by the third-party arose out of the claimant's work injury because WSI has certain legal obligations upon receiving notice of the third-party action. *Id.* Once WSI receives notice of a third-party action, if WSI chooses to participate in the action to recover any damages under the subrogation statute, WSI is required to pay fifty percent of the costs of the action, including part of the attorney's fees as provided by the statute. *Id.* WSI is required to pay these costs even when there is no recovery of damages in the third-party action. *Id.*

[¶ 14] Because we find that WSI's findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law, we affirm WSI's order that it may apply the subrogation statute to Toso's settlement award.

[¶ 15] Affirmed.

[¶ 16] JOEL D. MEDD, D.J., and CAROL RONNING KAPSNER, J., concur.

I concur in the result. DALE V. SANDSTROM.

[¶ 17] The Honorable JOEL D. MEDD, D. J., sitting in place of CROTHERS, J., disqualified.

MARING, Justice, dissenting.

[¶ 18] I respectfully dissent. There is no question that, under our law, WSI is subrogated to the rights of an injured employee to recover a portion of the damages sustained by him caused by the malpractice of a physician which aggravates an original work injury. *Polucha v. Landes,* 60 N.D. 159, 233 N.W. 264, 270 (1930). The issue presented to our Court for the first time is whether the subrogation right under N.D.C.C. § 65–01–09 is limited to the extent of compensation and benefits WSI "has paid or would otherwise pay in the future" for the negligent physician's aggravation of the original injury. I am of the opinion that WSI's "subrogation to the rights of the employee in a malpractice action [is] only to the extent of any compensation it was required to pay for aggravation of the original injury and not for compensation it was required to pay as a result of the accident which did not arise from negligence of the physician." 8B Appleman, *Insurance Law and Practice* § 4959, at p. 192 (1981).

[¶ 19] It is important to examine the history and record of this case in order to understand its posture when it was heard by the Administrative Law Judge and by our Court on appeal.

[¶ 20] The record of this case includes the hearing exhibits and the briefs of Toso and WSI for the administrative hearing. The correspondence between Toso's attorney and WSI reveals that Toso's attorney notified WSI that Toso had served a summons and complaint on Dr. Stavenger asserting medical negligence in the treatment of his work-related injury. Toso provided WSI copies of the pleadings and

both plaintiff's and defendant's answers to interrogatories. In these documents, Toso provided to WSI the opinion of his expert witness, Dr. Johannes C. Coetzee and defendant's expert witness, Dr. William T. Simonet. Toso's attorney informed WSI that Dr. Coetzee would testify that Dr. Jeffrey Stavenger's failure to properly treat Toso's injured foot caused an increase in the disability of the foot and that he had no expert witness testimony that Dr. Stavenger's negligence resulted in medical expenses or wage loss solely attributable to that negligence. WSI was provided defendant's expert witness answers to interrogatories in which Dr. Simonet stated Dr. Stavenger followed the appropriate standard of care and that Toso's claimed problems were all the result of the initial injury. Toso's attorney proposed to WSI that only benefits paid by WSI as a result of Dr. Stavenger's aggravation of the original injury were recoverable by WSI from the third-party damages. WSI took the position that, under N.D.C.C. § 65–01–09, it was entitled to recover all of the benefits it had paid from the date of the original injury from any third-party recovery. Toso's and WSI's positions never changed.

[¶ 21] Toso settled the medical malpractice claim for $82,500. In a December 29, 2003, letter to WSI, Toso's attorney took the position "that since no compensation was payable or paid with respect to the third party's liability, there should be no deduction or obligation to repay any portion of the current settlement." WSI disagreed and issued a subrogation order claiming a subrogation interest in fifty percent of the settlement proceeds or $41,250. The order apportioned that interest as follows:

| | |
|---|---|
| WSI's subrogation interest | $41,250.00 |
| Less WSI's share of attorney fees at 25% | $10,312.50 |
| Less WSI's share of approved costs (Exclusive of attorney fees) at 50% | $ 921.24 |
| Reimbursement to WSI and credit to employer's account. | $30,016.26 |

Toso had been paid wage loss benefits from August 25, 1999, to May 21, 2001, of $38,886.86 and medical expense benefits of $18,505.42 for a total of $57,392.28. Toso was ordered to remit the sum of $30,016.26 to WSI. Toso requested a hearing and submitted that WSI could only recover amounts caused by the medical negligence it had paid or that would otherwise be payable in the future; that the only damage caused by the medical negligence was an increase in permanent disability of Toso's foot and that WSI had not paid any benefits for permanent partial disability. The Specification of Issue dated April 5, 2004, and set forth by the ALJ for the hearing was "whether Workforce Safety and Insurance's subrogation interest pursuant to N.D.C.C. § 65–01–09 was properly applied to Lanny Toso's settlement of his medical malpractice claim." In its Order Setting Briefing Schedule and Oral Argument dated April 13, 2004, the ALJ stated counsel for WSI and Toso agreed "that no material facts must be determined to resolve this matter and that an evidentiary hearing is therefore not necessary...." WSI and Toso each submitted a brief. In his brief, Toso stated that the issue was: "Under N.D.C.C. § 65–01–09, is the WSI subrogation right limited to the 'injury' caused by the negligent third party?" WSI's brief stated: "Toso and WSI have agreed to submit the dispute concerning application of WSI's subrogation claim under N.D.C.C. § 65–01–09 to the ALJ based upon the stipulated exhibits and written briefs." Further, addressing Toso's position that WSI did not pay for any medical expense or wage loss caused by the negligence of Dr. Stavenger, WSI's brief stated:

WSI took no position with respect to these issues given its interpretation on how N.D.C.C. § 65–01–09 is to be ap-

plied to this third party recovery, i.e., the statute does not call for a separation and examination of the type of benefits paid and recoverable in the third party action. If it is ultimately judicially determined that WSI's interpretation of N.D.C.C. § 65–01–09 is in error, WSI must be permitted the opportunity to evaluate and determine the amount of benefits to which its subrogation claim may be applied in this case.

The ALJ, in her Recommended Findings of Fact, Conclusions of Law, and Order notes that the parties submitted briefs, presented oral argument, and "[n]o testimony was taken and exhibits 1–20 consisting of 90 pages were stipulated to by the parties prior to the hearing and were admitted." The ALJ stated "[t]he issue to be decided is whether Workforce Safety and Insurance's subrogation interest pursuant to N.D.C.C. § 65–01–09 was properly applied to Lanny Toso's settlement of his medical malpractice claim." The ALJ and the parties treated the issue as a question of law involving the interpretation of a statute. The ALJ recommended that WSI had properly applied N.D.C.C. § 65–01–09 to Lanny Toso's settlement of his medical malpractice claim. WSI adopted the ALJ's decision.

[¶ 22] Toso appealed WSI's final order to the district court on the grounds that the decision was not in accordance with the law pursuant to N.D.C.C. § 65–01–09. The district court affirmed WSI's final order. Toso then appealed to our Court.

[¶ 23] On appeal, Toso framed his issue: "Under N.D.C.C. § 65–01–09, does WSI's subrogation right include all benefits paid to an employee, including benefits representing injuries and damages for which the Third Party Defendants is not and could not be liable?" In WSI's brief on appeal to our Court, it stated:

Toso and WSI agreed to submit the dispute concerning application of WSI's subrogation claim under N.D.C.C. § 65–01–09 to the ALJ based upon the stipulated exhibits and written briefs.... Again, no adjudication was made as to the factual issues relating to the effect of the alleged medical malpractice on the medical, disability or permanent impairment. The sole issue for the ALJ to determine was whether N.D.C.C. § 65–01–09 was properly applied to the settlement proceeds in Toso's third party claim.

[¶ 24] Based on my review of this record, the only issue before our Court is whether WSI erred as a matter of law when it concluded it was entitled to reimbursement for all benefits it had paid to Toso from the date of the original injury out of Toso's medical malpractice settlement. This issue requires our interpretation of N.D.C.C. § 65–01–09 and is a question of law fully reviewable by our Court. *Shiek v. N.D. Workers Comp. Bureau*, 2001 ND 166, ¶ 17, 634 N.W.2d 493. "The primary purpose of statutory construction is to ascertain legislative intent." *Id.* "The Legislature's intent must be sought initially from the statutory language." *Stutsman County v. State Historical Society of N.D.*, 371 N.W.2d 321, 325 (N.D. 1985).

[¶ 25] In *Ness v. St. Aloisius Hospital*, 313 N.W.2d 781, 782–83 (N.D.1981), our Court held the provision regarding the Worker's Compensation Bureau's (now known as Workforce Safety and Insurance), right to subrogation ambiguous. In that case, we said:

Statutes must be construed to avoid absurd results. When the Legislature uses a term which has a peculiar and appropriate meaning in law, it shall be construed to such peculiar and appropriate meaning. The Bureau's right is one

of subrogation only. Insofar as the Bureau stands in the shoes of Marva D. Ness in her individual capacity, when those rights are barred to the subrogee, Marva D. Ness, they are also barred to the subrogor, the Bureau. *Id.* at 783 (citations omitted). WSI's right of subrogation under N.D.C.C. § 65–01–09 has been changed by the legislature several times. *See* N.D.R.C. § 65–0109 (1943), N.D.R.C. § 65–0109 (1949); *Gimble v. Montana–Dakota Utilities Company,* 77 N.D. 581, 44 N.W.2d 198, 200–01 (1950); N.D.C.C. § 65–01–09. First, it prohibited an employee claiming compensation from bringing any third-party action. N.D.R.C. § 65–0109 (1943). Then, it allowed an employee claiming compensation to also bring a third-party action, but granted the Bureau the right to one-hundred percent of the recovery. N.D.R.C. § 65–0109 (1949). The statute currently grants WSI a right to fifty percent of the recovery. N.D.C.C. § 65–01–09. If the language of a statute is ambiguous or of doubtful meaning or if adherence to the strict letter of the statute would lead to an absurd result, a court may resort to extrinsic aids to determine the intent of the legislature. *Shiek,* 2001 ND 166, ¶ 17, 634 N.W.2d 493.

[¶ 26] In *Blaskowski v. ND Workmen's Compensation Bureau,* we held that "[t]he purpose of the Bureau's subrogation rights is to reimburse the fund, to the extent possible, at the expense of the persons at fault." 380 N.W.2d 333, 335 (N.D.1986) (citations omitted). We also pointed out that the legislature in 1965 reduced the Bureau's right to subrogation of third-party recoveries from one-hundred percent to fifty percent. *Id.* (citing 1965 N.D. Sess. Laws ch. 452). We concluded "[t]his change was apparently made to induce employees to bring actions against third parties who were at fault." *Id.* (citing to Minutes of SB 2143, 1981 N.D. Sess Laws. ch. 641).

[¶ 27] In a subsequent case construing N.D.C.C. § 65–01–09, our Court stated "we are not certain that the purpose of § 65–01–09, N.D.C.C., is limited to reimbursing the Bureau for its expenditures. It is clear that by amending § 65–01–09, N.D.C.C., in 1965 that the Legislature intended this statutory provision as an incentive for the worker to pursue and litigate legal claims against culpable third parties." *Lawson v. N.D. Workmen's Compensation Bureau,* 409 N.W.2d 344, 347 (N.D.1987) (citations omitted). Most significantly, we noted "the purpose and intent of Title 65, N.D.C.C., is to protect the injured worker and ensure the prosperity of the State by protecting its wage workers." *Id.;* N.D.C.C. § 65–01–01 (stating in relevant part that "[t]he state of North Dakota, . . . declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and . . . sure and certain relief is hereby provided . . .)".

[¶ 28] In *Lawson v. N.D. Workmen's Compensation Bureau,* our Court was presented with the correctness of WSI's calculation of costs under N.D.C.C. § 65–01–09. We concluded that the language creating the statutory formula for costs was somewhat ambiguous, and that "any ambiguity must be interpreted in favor of the worker, Lawson, and in pursuit of the legislative intent, providing a greater incentive to the injured worker to prosecute third-party claims." *Lawson,* 409 N.W.2d at 347. Based on our analysis, we held that WSI had to pay fifty percent of the costs of the third-party action despite the language in the statute that the costs should be prorated and adjusted based on the percentage of the total subrogation interest recovered to the total recovery. *Id.* at 347.

[¶ 29] I am of the opinion that N.D.C.C. § 65–01–09, when read as a

whole and applied to third-party malpractice recoveries is ambiguous. The legislative intent appears to be to encourage injured workers to bring third-party actions. The statute is designed to apply to factual situations where the work-related injury and third-party tortious conduct occur simultaneously. Therefore, in the usual situation, wage loss, medical expenses, and other losses will all arise at the time of the original injury.

[¶ 30] However, in a case involving medical negligence, there is a period of time from the original injury to the occurrence of the medical negligence. There is no question that, today, medical negligence cases are costly to pursue and difficult to prove. Common sense and basic math tell us there will be no incentive for an injured worker to pursue the average medical negligence case if N.D.C.C. § 65–01–09 is construed in the manner proposed by WSI. In light of all the changes to N.D.C.C. § 65–01–09 made by our legislature, I am convinced the intent has been to encourage injured workers to bring third-party actions, and I construe the statute with both that intent and the fact that WSI's construction "militates against that desired end" in mind. *See* N.D.C.C. § 1–02–39; *Lawson v. N.D. Workmen's Comp. Bureau,* 409 N.W.2d at 347.

[¶ 31] I also am of the opinion that to interpret only one provision of N.D.C.C. § 65–01–09 is inappropriate. "All sections of a statute must be construed to have meaning because the law neither does nor requires idle acts. In short, we are guided by the common-sense principle that a statute is to be read to give effect to each of its provisions, whenever fairly possible." *Stutsman County v. State Historical Soc. of N.D.,* 371 N.W.2d 321, 325 (N.D.1985).

[¶ 32] I turn now to the language of our subrogation statute, found at N.D.C.C. § 65–01–09:

When an injury or death for which compensation is payable under provisions of this title shall have been sustained *under circumstances creating in some person other than the organization a legal liability to pay damages in respect thereto,* the injured employee, or the employee's dependents may claim compensation under this title and proceed at law to recover damages against such other person. The organization is subrogated to the rights of the injured employee or the employee's dependents to the extent of fifty percent of the damages recovered up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee. The organization also has a lien to the extent of fifty percent of the damages recovered up to a maximum of the total amount it has paid in compensation and benefits.

(Emphasis added). When Toso's workplace injury was first sustained, Dr. Stavenger had no legal liability to pay any damages. The injury was sustained because a pipe, belonging to Toso's employer, crushed Toso's ankle at his employer's worksite.

[¶ 33] Our subrogation statute cannot even be said to apply until Dr. Stavenger's alleged malpractice occurred. Only at that point had an injury been sustained "under circumstances creating in some person other than the organization a legal liability to pay damages in respect thereto." *See id.*

[¶ 34] The problem with WSI's position is addressed in Larson's Worker's Compensation Law:

An illustration will point up the problem: suppose that the employee suffers a simple injury, for which he or she would ordinarily receive compensation in the amount of $2,000. The injury is aggra-

vated by a physician, so that the actual compensation for which the employer becomes liable is $5,000. The compensation cost, so to speak, of the aggravation is $3,000. Now suppose, under the majority rule, the employer, having paid the employee $5,000 compensation, and having been subrogated to the employee's malpractice action, recovers $5,000 damages for the aggravation alone from the physician. Under a literal reading of most subrogation statutes, presumably the employer can keep the entire $5,000 to repay itself for its compensation outlay, and presumably there is no "excess" to be paid over to the employee. This is obviously unfair, since the $5,000 damages should be used to repay only the $3,000 outlay attributable to the malpractice, and the other $2,000 should go to the employee. The inequity becomes more glaring when you realize that the original uncomplicated injury might indeed have actually been caused by the employer's negligence, so that the employee's money is actually used to reimburse the employer for its own wrong.

*Larson's Worker's Compensation Law* § 112.02(5)(a). In this case, it appears WSI has only reimbursed Toso for damages arising out of the original injury. WSI does not claim to have provided Toso any compensation for the aggravation allegedly caused by Dr. Stavenger. Toso's recovery from Dr. Stavenger can only be said to have been compensation for the aggravation of the original injury caused by the medical negligence.

[¶ 35] Other jurisdictions have addressed the issue before us. *See Larson's Worker's Compensation Law* § 112.02(5)(a) and (b). In *Robinson v. Liberty Mutual Ins. Co.,* the Illinois Court of Appeals dealt with a very similar situation. 222 Ill.App.3d 443, 165 Ill.Dec. 3, 584 N.E.2d 182 (1991). In February 1981, the plaintiff suffered an on-the-job injury to his back. *Id.* The Illinois Industrial Commission determined the plaintiff was entitled to $6,067.47 in temporary total disability. *Id.* Plaintiff later learned that an October 1983 back surgery arising out of the on-the-job injury had worsened his condition. *Id.* Plaintiff filed a petition with the commission in January 1985 seeking additional temporary total disability payments relating back to June 1, 1981. *Id.* Plaintiff was subsequently awarded $73,899. *Id.* In April 1985, plaintiff filed a medical malpractice action against the doctor who performed the back surgery. *Id.* at 182–83. This case was settled with the doctor in 1989 for $350,000. *Id.* at 183. Plaintiff's employer's insurer intervened and filed a motion requesting that plaintiff's settlement be "impressed" with a lien in the amount of $79,966.47, the total amount the insurer had paid plaintiff. *Id.* Plaintiff argued the insurer's lien could not include the $6,067.47 in benefits paid to him prior to the surgery nor could it claim the entire amount of $73,899.00 subsequently paid to him because a portion of those benefits were for a period before surgery during which plaintiff could not work. *Id.* The Illinois Court of Appeals, interpreting a statute similar to our own, agreed with the plaintiff, stating its conclusion was in line with other jurisdictions who have ruled:

> [T]he employer's lien should extend to only those expenses attributable to the medical aggravation of the injury; i.e. that the amount of the lien should be limited to the amount that the employer is required to pay because of the malpractice.

*Id.* at 184 (noting similar holdings in: *Dodds v. Stellar,* 30 Cal.2d 496, 183 P.2d 658 (1947); *Heaton v. Kerlan,* 27 Cal.2d 716, 166 P.2d 857 (1946); *Industrial Comm'n v. Standard Insurance Co.,* 149

Colo. 587, 370 P.2d 156, 158 (Co.1962); *Breen v. Caesars Palace,* 102 Nev. 79, 715 P.2d 1070 (1986); *Drypolcher v. New York Telephone Co.,* 85 A.D.2d 895, 446 N.Y.S.2d 728 (N.Y.App.Div.1981); and citing 2A A. Larson, *The Law of Workmen's Compensation* § 72.65(b) (1952)). The court held "plaintiff's original injury was not caused under circumstances creating legal liability on the part of a third party." The court noted that "to hold otherwise would result in the employee receiving no compensation for pre-malpractice injuries." *Id.* at 184(citation omitted).

[¶ 36] The Colorado Supreme Court, concluding a physician is a third person under its statute and subject to common-law liability, held:

> Since we have determined that the physician is a third party and that the employer is liable for compensation for the injury caused by the physician's negligence, it follows that by the express provisions of [the statute] the employer and insurer are entitled to be subrogated to the rights of the employee in his malpractice action against the negligent physician. However, the employee's claim, being bifurcated, he can recover from the doctor only such damages as flow from the doctor's negligence. Accordingly, the insurer is subrogated only to the extent of the compensation he is required to pay for aggravation of the original injury by the doctor. Moreover, the insurer is not subrogated for compensation he is required to pay as a result of the accident which did not arise from the negligence of the physician.

*Industrial Comm'n v. Standard Insurance Co.,* 149 Colo. 587, 370 P.2d 156, 158 (Co. 1962) (citations omitted). In my opinion, the language in N.D.C.C. § 65–01–09, limiting WSI's subrogation right to only those injuries "sustained under circumstances creating in some person other than the organization a legal liability to pay damages in respect thereto" clearly does not provide WSI with a right to recover for benefits it paid for the original injury from damages recovered for subsequent medical malpractice. Damages occurring after the malpractice may or may not arise from the aggravation of the injury by the negligent physician. The seriousness of the original injury and the seriousness of the medical negligence will affect the determination.

[¶ 37] WSI is entitled to a subrogation right under N.D.C.C. § 65–01–09 in this case. I am of the view, however, that our statute requires that WSI's subrogation right be limited to benefits paid arising out of the aggravation of Toso's original injury. WSI does not, under our statute, receive a right to reimbursement for any compensation WSI paid to Toso for injuries not related to the alleged malpractice aggravation because those injuries were not injuries sustained under circumstances creating in Dr. Stavenger a legal liability to pay damages in respect thereto. In order to be entitled to reimbursement from Toso's settlement recovery, WSI must establish what benefits it paid through May 21, 2001, were caused solely by the medical negligence. WSI must establish it was compelled to make payments of benefits because of the negligence of Dr. Stavenger. If it can so establish, WSI is then entitled to reimbursement to the extent of those benefits paid due to the negligence of Dr. Stavenger. If there is no evidence that any compensation paid by WSI to Toso was for damages Toso suffered because of the medical negligence, then WSI is entitled to a credit in the amount of $30,016.26 for any benefits it may be obligated to pay in the future which are a result of the medical negligence of Dr. Stavenger. *See Breitwieser v. State,* 62 N.W.2d 900, 907 (N.D.1954) (holding that a dependent must refund out of her third-party recovery anything paid,

but if nothing has been paid there is no reimbursement to the fund and the amount can be claimed as a credit toward future compensation due her).

[¶ 38]   I would reverse and remand this case for an evidentiary hearing on whether the compensation WSI paid to Toso is attributable to the aggravation of the original injury caused by Dr. Stavenger and, if so, the amount.

[¶ 39]   Mary Muehlen Maring