2006 ND 208

**Lynette FORBES, Claimant and Appellant,**

v.

**WORKFORCE SAFETY AND INSURANCE FUND,**
Appellee,

and

**Mercy Medical Center, Respondent.**

No. 20050431.

Supreme Court of North Dakota.

Oct. 17, 2006.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for appellee.

MARING, Justice.

[¶ 1] Lynette Forbes appealed from a district court judgment affirming a Workforce Safety and Insurance ("WSI") order terminating her future disability and medical benefits and ordering her to repay previously paid disability and medical benefits. We affirm in part, concluding a reasoning mind could reasonably have found by a preponderance of the evidence that Forbes made intentional and material false statements, which caused her doctors to remove her from work and resulted in payment by WSI of disability benefits prior to her surgery on April 29, 2003. We affirm WSI's order requiring Forbes to forfeit all future benefits and to reimburse WSI for disability benefits paid up to April 29, 2003. However, we reverse those parts of the WSI order which require Forbes to reimburse WSI for disability benefits after April 29, 2003 and for all of her medical benefits paid by WSI after her work injury.

I

[¶ 2] In August 2002, Forbes submitted a claim to WSI for workers' compensation benefits, reporting injuries to her low back, neck, left arm, and head sustained during the course of her employment at Mercy Medical Center as an operating room nurse. Forbes reported the injury occurred on August 13, 2002, indicating she injured herself while holding a camera for a surgical procedure. Forbes also filled out an incident report as required by her employer. WSI accepted Forbes' claim, and Forbes began receiving disability and medical benefits.

[¶ 3] At the time of her August 2002 claim, Forbes also completed a prior injury questionnaire. On the questionnaire, Forbes was asked whether she had previously had any health problems or injuries to the portions of her body injured during the work incident. At that time, Forbes did not disclose a previous injury from July 2002. Almost a year later, Forbes submitted additional incident reports to her employer, claiming she wrenched her lower back while assisting a patient in July

2002, and she incurred pain in her neck while attempting to keep an x-ray machine from tipping in September 2002. In 2003, WSI conducted an investigation of whether Forbes had made false statements and misrepresentations regarding her physical condition, capabilities, and activities, and whether she had failed to report work activities and earned income.

[¶ 4] On January 20, 2004, WSI issued a notice of intention to discontinue benefits, informing Forbes she had violated N.D.C.C. § 65–05–33 relating to penalties for false claims or false statements in connection with a claim for WSI benefits. The notice said Forbes was not entitled to any further benefits after February 10, 2004, and previously paid disability benefits and medical benefits had been erroneously paid on the basis of her false statements, resulting in an overpayment. Forbes requested reconsideration.

[¶ 5] In a March 11, 2004, order on reconsideration, WSI found Forbes' willful false statements had caused the erroneous payment of $20,438.55 in disability payments and $31,982.81 in medical benefits. WSI ordered that Forbes forfeit all future benefits on her claim after February 10, 2004, including medical, disability, vocational rehabilitation, and permanent partial impairment benefits. WSI further ordered Forbes to repay $52,421.36 for disability and medical benefits provided to her between September 13, 2002, and September 23, 2003.

[¶ 6] Forbes requested a rehearing, and an administrative hearing was held before an administrative law judge ("ALJ"). The ALJ issued recommended findings of fact, conclusions of law, and order. WSI adopted the recommended findings of fact, conclusions of law, and order.

[¶ 7] WSI found Forbes willfully failed to report earnings from physical examinations conducted for Portamedic from August 2002 to August 2003, and during that period, she also falsely stated to WSI that she was not working nor receiving income. WSI found Forbes did not report income she had received from her sales of Mary Kay products, or $5,000 she had received from a doctor to start her Mary Kay business. WSI further found Forbes had willfully misrepresented her physical condition to her medical providers and her employer, resulting in her removal from work and in payment by WSI of benefits.

[¶ 8] WSI also found that despite numerous reports to her doctors of pain in her neck and back, including soreness, stiffness, and tingling, Forbes continued traveling to provide insurance physicals and even engaged in strenuous physical exercise, including weight-lifting, walking, and attending yoga and "trim and tone" classes. WSI found her significant physical activities were juxtaposed in time with reports to her doctors of pain and difficulty doing even simple tasks, such as washing dishes, peeling potatoes, putting on makeup, curling her hair, and stirring food. Specifically, WSI found:

2. On August 16, Ms. Forbes saw Dr. Wiens. She complained of being stiff and sore, with tingling in her arms. Dr. Wiens diagnosed muscle spasms of the neck and back, gave her some VIOXX, and thought she could continue to work. On August 19, 2002, he removed Ms. Forbes from work until August 21. Ms. Forbes however continued to conduct insurance physicals for Portamedic and did so on or about August 21, 2002. The next day, Ms. Forbes reported to Harry Wallner, her physical therapist, that she had been unable to work the last couple of days.

. . . .

5. On November 19, 2002, Ms. Forbes presented for follow-up of her

neck pain. She said she had persistent neck pain radiating into her right arm and achiness in the left arm with numbness of the 4th and 5th digits of her left hand. She was diagnosed with neck pain, C5, C6 posterior disk bulge, posterolateral disc protrusion and small posterior osteophyte at C6, C7 and was taken off work "secondary to her pain." She was referred to physical therapy and Dr. Arazi. During November, and while removed from work, she continued to perform insurance physicals for Portamedic.

. . . .

9. On January 3, 2003, Ms. Forbes followed up with Dr. Nielsen and complained that she was going through physical therapy and now "her symptoms basically went back to Square One." Dr. Nielsen continued her removal from work. That same day, Ms. Forbes attended the Healthy Hearts Wellness Center, exercising in the weight room. On January 13, 2003, Ms. Forbes followed up with Dr. Arazi, and complained that her symptoms were getting worse. She complained that she had difficulty doing dishes, peeling potatoes, putting on her makeup, curling her hair, and stirring. Upon examination, she had pain on hyperextension of the neck. Dr. Arazi noted that "[s]ince the patient's symptoms appear to have gotten worse, I am not quite sure what to do at this point." He removed Ms. Forbes from work indefinitely and considered a referral to Mayo Clinic. Dr. Arazi agrees that he removed her from work based upon Ms. Forbes' representations to him regarding her inabilities.

10. On the other hand, while Ms. Forbes was complaining to her doctors and employer that her symptoms were getting worse and that she had difficulty brushing her teeth, talking on the phone, doing dishes, peeling potatoes, putting on her makeup, curling her hair, etc., she was also attending the Healthy Hearts Wellness Center, lifting weights, walking and attending yoga and trim and tone classes. On January 23, 27, and 29, she attended both classes.

11. Connie Wold, manager of the Healthy Hearts Wellness Center and instructor, taught both the yoga and trim and tone classes. She had occasion to observe Ms. Forbes in class. She stated that the yoga class was very tough and the positions are challenging. She testified that Ms. Forbes always does the advanced moves, not the modified positions. Ms. Wold regularly includes a Plank pose in the yoga class. That pose is not recommended for people with carpal tunnel or a shoulder problem, yet Ms. Forbes does that pose and is able to keep up with Ms. Wold, who competes in marathons and triathalons. At no time did she observe Ms. Forbes holding back or failing to complete an activity, even while doing shoulder presses with weights during the trim and tone class. Ms. Wold considers Ms. Forbes to be a very fit individual and considered her a nine, on a scale of one to ten, with ten being a very fit individual. Given the difficulty of the poses used in the yoga class, it is hard to reconcile Ms. Forbes' complaints with her actual physical activity. Dr. Arazi testified during his deposition that he agreed there appeared to be a substantial difference between her actual physical activities and what he understood her physical condition to be. He believed it was more likely than not that Ms. Forbes had misrepresented her physical condition.

. . . .

13. The greater weight of the evidence indicates that Ms. Forbes willfully misrepresented her physical condition to

her medical providers and employer, resulting in her removal from work and payment by WSI of disability benefits. Ms. Forbes complained of significant pain and maintained that she could not return to work, any work, yet she continued to perform insurance physicals for Portamedic, driving to the appointments to complete the physicals, while complaining to doctors that she couldn't drive to go to work at Mercy Hospital. She complained of significant pain and that her symptoms were getting worse, all the while she was lifting weights and attending yoga and trim and tone classes, doing advanced yoga moves, and keeping up with a triathlete, while complaining to her doctors that she had trouble performing the most basic self care. Ms. Forbes's misrepresentations of her physical activities and condition caused WSI to pay medical and disability benefits in error.

14. The greater weight of the evidence indicates that Ms. Forbes willfully failed to disclose income and monies received from Portamedic, Mary Kay sales, and Dr. Vaughan. The only explanation Ms. Forbes offered was that she assumed WSI wanted only to know whether she had returned to work at Mercy Medical Hospital. When questioned about her employment with Portamedic, she characterized her employment as more of a "hobby." As discussed, if that were true, the Injured Worker Status Report clearly required her to report it. She had no explanation for her failure to disclose income from Mary Kay, except to say that she started the business to get her products at cost and that she hadn't made any money on it. As discussed, if that were true, the Injured Worker Status Report clearly required her to report any moneys received, whether for profit or loss. Likewise, she could not explain why she did not disclose the $5,000 she received from Dr. Vaughan, but she admits that he gave her the money to start her Mary Kay business. Ms. Forbes's failure to disclose her work activities and income caused WSI to pay disability benefits in error.

[¶ 9] WSI concluded Forbes failed to report work and income, misrepresented her physical condition, and made intentional and material false statements, which constituted violations of N.D.C.C. § 65–05–33. WSI ordered that Forbes forfeit future disability benefits and reimburse WSI $52,421.36 for benefits paid on the basis of her false statements. The district court affirmed the WSI decision, and Forbes appealed.[1]

## II

[¶ 10] Courts exercise only a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Sorlie v. Workforce Safety & Ins.*, 2005 ND 83, ¶ 7, 695 N.W.2d 453.

Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:

1. The order is not in accordance with the law.

---

1. Forbes' notice of appeal purports to appeal from "the November 3, 2005, Order for Judgment entered on November 4, 2005, in the above-referenced matter." The actual judgment was also entered on November 4, 2005. We treat Forbes' appeal from the order for judgment as an appeal from the judgment. *See Gray v. North Dakota Game & Fish Dep't*, 2005 ND 204, ¶ 1 n. 1, 706 N.W.2d 614 (an attempted appeal from the order will be treated as an appeal from a subsequently entered consistent judgment).

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Barnes v. Workforce Safety and Ins.*, 2003 ND 141, ¶ 9, 668 N.W.2d 290.

*Sorlie*, at ¶ 7 (quoting *Elshaug v. Workforce Safety & Ins.*, 2003 ND 177, ¶ 12, 671 N.W.2d 784). "We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979); *see also Roberts v. North Dakota Workmen's Comp. Bureau*, 326 N.W.2d 702, 704–05 (N.D.1982). Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Sorlie*, at ¶ 7.

III

[¶ 11] Forbes argues that WSI did not prove by the greater weight of the evidence that she made intentional, material false statements.

[¶ 12] WSI found Forbes violated N.D.C.C. § 65–05–33, which prohibits false claims or false statements and which, at the time WSI first ordered Forbes to forfeit and repay benefits in 2004, provided:

1. A person who claims benefits or payment for services under this title or the employer of a person who claims benefits or payments for services is guilty of a class A misdemeanor if the person or employer does any one or more of the following:

a. Willfully files a false claim or makes a false statement in an attempt to secure payment of benefits or payment for services.

b. Willfully misrepresents that person's physical condition, including deceptive conduct which misrepresents that person's physical ability.

c. Has a claim for disability benefits that has been accepted by the organization and willfully fails to notify the organization of:

(1) Work or other activities as required under subsection 3 of section 65–05–08;

(2) The receipt of income from work; or

(3) An increase in income from work.

2. If any of the acts in subsection 1 are committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or payment for services, the offense is a class C felony.

3. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the organization for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury.

4. For purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense.

[¶ 13] To trigger the statutory consequences of N.D.C.C. § 65–05–33 for a false statement, WSI must prove: (1) there is a false claim or statement; (2) the false claim or statement is willfully made; and (3) the false claim or statement is made in connection with any claim or application for benefits. *Hausauer v. North Dakota Workers Comp. Bureau*, 1997 ND 243, ¶ 12, 572 N.W.2d 426. For purposes of the statute's civil penalties, this Court has defined "willfully" as conduct engaged in intentionally and not inadvertently. *Dean v. North Dakota Workers Comp. Bureau*, 1997 ND 165, ¶ 15, 567 N.W.2d 626 (citing *F.O.E. Aerie 2337 v. North Dakota Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D.1990) ("a false statement must be intentional, not inadvertent, and material, not peripheral")). WSI "must prove the claimant's state of mind was purposeful in making the false statement." *Hausauer*, at ¶ 14. "A state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence." *Dean*, at ¶ 20.

[¶ 14] In addition to proving that a false statement is willful, WSI must also prove the false statement is material. *Hausauer*, 1997 ND 243, ¶ 12, 572 N.W.2d 426; *Dean*, 1997 ND 165, ¶ 15, 567 N.W.2d 626. Based upon the language of N.D.C.C. § 65–05–33 and the civil penalty sought, two tests are used to determine "materiality." If WSI seeks reimbursement for benefits paid, the level of materiality required is proof by WSI that the false claim or false statement caused the benefits to be paid in error. *Hausauer*, at ¶ 17. If WSI seeks only forfeiture of future benefits, however, no such causal connection is required. *Id.* Thus, a false claim or false statement is sufficiently material for forfeiture of future benefits if the statement simply could have misled WSI or medical experts in deciding the claim. *Jacobson v. North Dakota Workers Comp. Bureau*, 2000 ND 225, ¶ 10, 621 N.W.2d 141. Ultimately, WSI's findings under N.D.C.C. § 65–05–33 must be affirmed if they are supported by a preponderance of the evidence. *Sjostrand v. North Dakota Workers Comp. Bureau*, 2002 ND 125, ¶ 30, 649 N.W.2d 537.

A

[¶ 15] WSI concluded that Forbes' false statements were neither minor nor innocent and that a pattern of false statements existed, including misrepresenting her physical condition to doctors and failing to report work and income. WSI concluded Forbes' statements to her medical providers regarding her physical condition were clearly intentional and meant to influence their consideration of her ability to work. WSI further concluded Forbes' failure to report work and income to WSI while receiving disability benefits was also willful. Specifically, WSI found Forbes was paid $881.69 by Portamedic for insurance physical examinations between August 2002 and August 2003. She also did not report income she

received from her Mary Kay business, nor did she report $5,000 she received from a doctor to start her business. Forbes completed sixteen injured-workers status reports from September 13, 2002, to September 9, 2003. Not until September 9, 2003, did Forbes report she had done insurance physicals for Portamedic, and then only reported that she earned $20.07. WSI noted that Forbes reported this income after it had begun its investigation and a private investigator had conducted some interviews.

[¶ 16] Forbes asserts she did not consider her Mary Kay activities to be work, and she reasonably believed WSI was aware of her "work" at Portamedic in calculating her disability benefits. However, WSI found Forbes testified she considered Portamedic more as a "hobby." It was reasonable here for WSI to find that Forbes' explanations of her understanding of work and income were not credible. *See, e.g., Jacobson*, 2000 ND 225, ¶ 15, 621 N.W.2d 141. WSI specifically found Forbes' explanations for her failure to report work activities and income were not credible and were intentional, not inadvertent. We conclude a reasoning mind could have reasonably found by a preponderance of evidence that Forbes willfully failed to report the receipt of income from employment in violation of N.D.C.C. § 65–05–33. Forbes also asserts that she performed both yoga and the fitness exercises as a part of physical therapy and was not engaged in making false statements or misrepresentations relating to her physical condition. Again, however, WSI did not find Forbes credible in light of her physical activities when compared to the contemporaneous statements she made to her doctors and employer.

[¶ 17] There is substantial evidence regarding the nature and extent of Forbes' work activities and income, in addition to her level of physical activity, from which a reasoning mind could reasonably find, that Forbes purposefully and intentionally made false statements. We conclude a reasoning mind reasonably could have found Forbes' false statements were proven by the weight of the evidence in the record.

B

 [¶ 18] With regard to the materiality of Forbes' false statements, WSI specifically concluded that Forbes' statements regarding her physical condition and her willful failure to report income not only misled WSI into paying disability benefits requiring Forbes to forfeit all future benefits but, in addition caused WSI to pay disability benefits requiring Forbes to reimburse WSI for all benefits paid. Our Court has said:

> If the Bureau seeks reimbursement for benefits paid, the level of materiality required is proof by the Bureau that the false claim or false statement caused the benefits to be paid in error. However, if the Bureau is seeking only forfeiture of benefits, . . ., no such causal connection is required. A false claim or false statement is sufficiently material for forfeiture of future benefits if it is a statement which could have misled the Bureau or medical experts in a determination of the claim.

*Jacobson v. North Dakota Workers Compensation Bureau*, 2000 ND 225, ¶ 10, 621 N.W.2d 141 (citations omitted). Dr. Arazi testified that if Forbes was able to do the yoga and other physical exercise described "and this is accurate, then, you know, she is likely to have been able to do more than I thought when I saw her." He further testified that had he been aware of her apparent ability to undergo these activities, he would have "seriously considered it" when deciding whether to release

Forbes to return to work on January 13, 2003. Based on this evidence a reasoning mind reasonably could have concluded that Forbes' false statements could have misled WSI in paying disability benefits and caused WSI to pay disability benefits in error. We agree the false statements were material with regard to both the forfeiture of all future benefits and to the reimbursement of all disability benefits paid by WSI up to the surgery performed on April 29, 2003. We affirm the decision of WSI as to these findings.

[¶ 19] However, with regard to WSI's findings that Forbes' misrepresentations caused WSI to pay medical benefits in error and caused WSI to pay disability benefits in error after Forbes' April 29, 2003, surgery, which would require reimbursement of all of those benefits to WSI, we reverse.

[¶ 20] WSI found that Forbes sustained an injury to her low back, neck, left arm, and hand on August 13, 2002, while employed as an operating room nurse. WSI accepted liability and paid benefits. However, WSI found Forbes worked after her injury for Portamedic conducting physicals on August 21, 26, 27, and September 4, 2002, and entered into a new contract agreement with Portamedic on October 1, 2002. The evidence established Forbes received a total of $881.69 from August 2002 to August 2003 from Portamedic. WSI also found Forbes received monies from Mary Kay sales during this time. WSI concluded that Forbes misrepresented her physical condition because from August 2002 through January 2003 she complained of significant neck pain, pain radiating into her right and left arms, and numbness in her right and left hand and fingers while, at the same time, attending the Healthy Hearts Wellness Center, lifting weights, and attending yoga and trim and tone classes. Dr. Arazi did testi-

fy that he agreed if she was attending all of these classes without difficulty there appeared to be a substantial difference between her actual physical activities and what he understood her condition to be. Dr. Arazi concluded that "it's possible that she may have been exaggerating her symptoms." Dr. Arazi removed Forbes from work, even sedentary, because of her representations of pain and restrictions. WSI's conclusion that it paid disability benefits as a result of Forbes' misrepresentations is therefore supported by evidence in the record.

[¶ 21] However, there is no evidence in the record, and no evidence mentioned in WSI's findings that causally connect Forbes' misrepresentations and the payment of her medical benefits. Neither Dr. Arazi nor any other doctor, testified that Forbes' prescribed treatment would have been different had she not exaggerated her symptoms. Forbes underwent neurodiagnostic studies, physical therapy, and took prescribed medications. There is no evidence she did not sustain a work injury. In fact, on November 19, 2002, Forbes was diagnosed with "neck pain, C5, C6 posterior disk bulge, posterolateral disc protrusion and small posterior osteophyte at C6, C7 ..." by Dr. Arazi. On April 29, 2003, Dr. Mike Moore performed an anterior cervical decompression and fusion at C5–6, C6–7. Forbes saw Dr. Arazi on June 9, 2003, and reported that the pain in her right arm was gone after the April 29 cervical surgery. Dr. Arazi's impression was "post cervical fusion, suspect superimposed carpel tunnel syndrome and rule out possible thoracic outlet syndrome." On July 24, 2003, Dr. Moore indicated Forbes was released to regular work four hours per day and to increase as tolerated. On July 29, 2003, Forbes was seen by Dr. Booth, who diagnosed thoracic outlet syndrome, which in his opinion was work-related. Dr. Booth recommended physical

therapy and massage therapy. He also indicated she could return to work, but may have some limitations in using her right arm. After her surgery in April, the evidence of Forbes' attendance at the Healthy Heart Wellness Center shows Forbes attended a trim and tone class on July 1, 2003, a yoga and trim and tone class on September 16, 2003, and used weights, walked, and used a stair stepper on September 19, 2003. Dr. Nielsen, one of her treating physicians, released Forbes to return to work without restrictions on August 28, 2003.

[¶ 22] WSI has not provided any evidence that any of the medical benefits paid would not have been paid as a result of Forbes' work-related injuries. In order for WSI to require Forbes to reimburse it for medical benefits it must establish their payment was caused by Forbes' exaggerating her symptoms. The same is true for Forbes' disability benefits following her April 29, 2003, surgery.

[¶ 23] The order of WSI and the judgment of the district court are affirmed with regard to Forbes' responsibility to reimburse WSI for disability benefits paid from the date of the injury to April 29, 2003, and Forbes' forfeiture of all future benefits. The order of WSI and the judgment of the district court with regard to Forbes' responsibility to reimburse WSI for medical benefits and for disability benefits after April 29, 2003, is reversed and the case is remanded for a recalculation of the benefits which Forbes must repay to WSI.

[¶ 24] DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring in part, and dissenting in part.

[¶ 25] I concur in that part of the majority opinion concluding Forbes' false statements were material with regard to both the forfeiture of all future benefits and to the reimbursement of all disability benefits paid by WSI up to the surgery performed on April 29, 2003. However, I dissent from that part of the majority opinion which concludes there is no evidence to support WSI's findings that Forbes' statements caused WSI to pay disability benefits in error after Forbes' surgery and caused WSI to pay medical benefits in error. I would, therefore, require Forbes also to reimburse WSI for those benefits.

[¶ 26] WSI specifically found by a greater weight of the evidence that Forbes' misrepresentations of her physical activities and condition caused it to pay both medical and disability benefits in error. WSI also found by the greater weight of the evidence that Forbes' failure to disclose her work activities and income caused it to pay disability benefits in error. The majority opinion, however, states there is no evidence to support reimbursement of disability benefits after Forbes' surgery or to support any reimbursement of medical benefits.

[¶ 27] On the contrary, there is evidence that Forbes' false statements caused disability benefits to be paid following her April 29, 2003, surgery. The record contains evidence of Forbes' pattern of false statements in failing to report work and income continuing after her surgery. Of the approximately $307 Forbes collected from Mary Kay sales, five of the eight checks, totaling $235.46, were dated after her surgery. Additionally, of the sixteen injured-worker status reports in which Forbes consistently failed to report work and income, five were dated, signed, and submitted to WSI after the date of her surgery. It was only in her September 9, 2003, report that she revealed $20.07 of the $881.69 she had earned conducting insur-

ance physicals for Portamedic. In addition to Forbes' failure to report work and income, WSI found Forbes' willful misrepresentation of her physical condition to medical providers and her employer caused WSI to erroneously pay her benefits.

[¶ 28] The majority opinion does not adequately explain how these continuing false statements before and after her surgery are somehow cured and rendered "causally disconnected," and thus immaterial, so as not to require the disability benefits paid after her surgery to be reimbursed to WSI. On the basis of this record, it is illogical to find Forbes' pattern of false statements material for purposes of reimbursement of disability benefits prior to surgery but somehow immaterial for purposes of reimbursement of disability benefits after the surgery.

[¶ 29] This is also true with regard to the majority opinion's assertion that WSI has not provided any evidence that any of the medical benefits paid would not have been paid as a result of Forbes' work-related injuries. WSI found Forbes' misrepresentation of her physical activities and condition caused WSI to pay medical benefits in error. Although neither Dr. Arazi, nor any other doctor, directly testified Forbes' prescribed treatment would have been different had she not exaggerated her symptoms, the evidence in the record reflects that in response to Forbes' statements that her symptoms were worsening, Dr. Arazi was uncertain about a course of treatment and even considered a referral to the Mayo Clinic. WSI found Dr. Arazi testified that he agreed there appeared to be a "substantial difference" between her actual physical activities and what he understood her condition to be, and that it was more likely than not that she had misrepresented her physical condition. It is a reasonable inference from

the record that Forbes' false statements, particularly with regard to the misrepresentation of her physical condition, affected and influenced Forbes' course of treatment and the medical benefits paid. Without reweighing the evidence, Dr. Arazi's testimony supports WSI's specific finding that Forbes' misrepresentation of her physical activities and condition caused medical benefits to be paid.

[¶ 30] This Court should not substitute its judgment for that of the fact-finder. *See Toso v. Workforce Safety and Ins.*, 2006 ND 70, ¶ 8, 712 N.W.2d 312. "In evaluating WSI's findings of fact, we do not make independent findings or substitute our judgment for that of WSI, rather, we determine only whether WSI reasonably reached its factual conclusions from the weight of the evidence on the entire record." *Id.* (citing *Hopfauf v. North Dakota Workers Comp. Bureau*, 1998 ND 40, ¶ 8, 575 N.W.2d 436). This Court has previously stated that when a claimant fails to report income to WSI, the violation frustrates WSI's attempt to demonstrate materiality. *See Unser v. North Dakota Workers Comp. Bureau*, 1999 ND 129, ¶¶ 18–20, 598 N.W.2d 89. "It may be difficult, if not impossible, for [WSI] to discover or unearth a claimant's prior earnings which the claimant has intentionally concealed from [WSI]." *Id.* at ¶ 20. Failure to report work activities and income received in connection with unreported work activities impedes WSI's process of determining eligibility and is thus material. *See Snyder v. North Dakota Workers Comp. Bureau*, 2001 ND 38, ¶ 18, 622 N.W.2d 712. Similarly, it is a reasonable inference that Forbes' misrepresentations to her medical provider and her employer regarding her physical condition prevented WSI from accurately assessing the appropriateness of the medical benefits paid. Here, I believe from the record that all of Forbes' misrepresentations and false statements consid-

ered together affected and influenced WSI's decision whether to pay both disability and medical benefits, including the medical services recommended and received, which were a part of her claim for benefits.

[¶ 31] I would affirm.

[¶ 32] GERALD W. VANDE WALLE, C.J., concurs.